UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Case No. 6:15-cv-01666-RBD-GJK

WALTER STRATTON BAGG, ESQ.,
and COOPER LAW P.A., individually
and on behalf of all others similarly situated,

Plaintiffs,

vs.

USHEALTH GROUP, INC.,
a Delaware corporation, and
USHEALTH ADVISORS, LLC.,
a Texas limited liability company,

Defendants.
_______________________________________/

**PLAINTIFFS' RESPONSE TO USHEALTH GROUP, INC.'s MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

Plaintiffs, WALTER STRATTON BAGG, ESQ. and COOPER LAW P.A., by and through their undersigned attorneys, respond to USHEALTH GROUP, INC.'s ("UHG") Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction (D.E. 20) ("Motion") and affidavit in support thereof (D.E. 20-1),[1] and state in opposition thereto as follows:

## I. INTRODUCTION

Plaintiffs' Complaint alleges that UHG and its wholly owned sales and distribution subsidiary, USHEALTH Advisors, LLC ("UHA"), violated the Telephone Consumer Protection Act ("TCPA") and implementing regulations by "sending" a

[1] The plaintiff bears the burden of proving "by affidavit the basis upon which jurisdiction may be obtained" only if the defendant challenging jurisdiction files "affidavits in support of his position." *Venetian Salami Co. v. Parthenais,* 554 So.2d 499*,* 502 (Fla.1989). The affidavit of plaintiff Cooper Law P.A. manager, S. David Cooper, is thus contemporaneously filed.

facsimile advertisement to their fax machine and to the fax machines of other persons that does not contain the legally required opt-out language.[2] [3] Contrary to UHG's assertions, Plaintiffs have specifically alleged that UHG "sent" the illegal facsimile advertisement at issue and is thus liable for its transmission, as that term is defined by the TCPA, by alleging that UHA, the marketing and distribution arm of UHG within Florida, sent the subject advertisement for the benefit, and on behalf, of UHG, and that UHA operates to "[send] facsimiles *for the benefit of USHEALTH Group, Inc.* that advertise insurance products."[4] [5]

As such, this Court plainly has personal jurisdiction over UHG because (i) UHG, as the sender of the illegal facsimile advertisement, committed a tortious act within the state of Florida; (ii) UHG, through its website and wholly owned sales and distribution subsidiary (UHA), controls approximately one hundred agents soliciting sales of its insurance products in Florida, and thus solicits and conducts significant business in the

[2] The TCPA implementing rules specify that the opt-out notice contained in fax ads must: (1) be clear and conspicuous and on the first page of the ad; (2) state that the recipient may make a request to the sender not to send any future ads and that failure to comply, within 30 days, with a request is unlawful; and (3) contain a domestic contact telephone number and fax number for the recipient to transmit an opt-out request. *See* 47 C.F.R. § 64.1200(a)(4)(iii)-(iv). If neither the required telephone number nor fax number is a toll-free number, a separate cost-free mechanism, including a Web site address or email address, must be provided for a recipient to transmit a request to opt-out of future faxes. *See id*.

[3] Complaint at ¶¶ 8-11.

[4] Complaint at ¶ 12 (emphasis added).

[5] The FCC defines the "sender" of a facsimile advertisement as "**the person or entity on whose behalf a facsimile unsolicited advertisement is sent or** whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10) (2008).

state of Florida; and (iv) for these same reasons, UHG has more than minimum contacts within the state of Florida so as to satisfy due process.[6]

## II. DISCUSSION

### A. UHG Committed a Tortious Act Within Florida and is Directly Liable Under the TCPA as the "Sender" of Facsimile Advertisements Sent on its Behalf

UHG is subject to the jurisdiction of the courts of this state as the sender of the subject fax, sent on its behalf by UHA to recipients within Florida, which violated federal law. This tortious act supplies a basis for the exercise of specific jurisdiction against the sender, UHG, under §48.193(1)(a)(2), which has been interpreted to apply to a defendant's commission of tortious acts outside the state that cause injury inside the state. *See Posner v. Essex Ins. Co.,* 179 F.3d 1209 (11th Cir. 1999). Notably, this grant of personal jurisdiction specifically applies to tortious acts resulting from telephone, *electronic* or written communications sent into the state – such as the illegal facsimile

[6] The relevant provisions of § 48.193, Florida Statutes, identifying acts that may subject a defendant to jurisdiction in Florida provide:

(1) (a) A person , whether or not a citizen or resident of this state, who personally or through an agent does any of the facts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
....
2. **Committing a tortious act within this state**.
....
6. **Causing injury to persons** or property **within this state arising out of an act or omission by the defendant outside this state, if**, at or about the time of the injury .... (a) The **defendant was engaged in solicitation** or service **activities within this state** ....

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.
§ 48.193, Fla. Stat. (2013).

advertisement sent by UHG in the present case - and does not require an office or other additional physical presence in the state. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1333-55 (11th Cir. 2013); *Wendt v Horowitz,* 822 So.2d 1252 (Fla. 2002); *Crowe v. Paragon Relocation Resources, Inc.*, 506 F. Supp. 2d 1113, 1121 (N.D. Fla. 2007).

In its Motion, UHG states that it should not be subject to this Court's personal jurisdiction for the commission of a tortious act within the state for one reason: "Plaintiffs have not made one allegation that UHG sent the alleged facsimile advertisements." Motion at 11. This is patently untrue. As stated above and discussed more fully below, Plaintiffs have specifically alleged that UHG "sent" the illegal facsimile advertisements at issue and is thus liable for its transmission, as that term is defined by the TCPA, by alleging that the illegal facsimile advertisements at issue served to advertise UHG's products and services, and were sent for the benefit of UHG, and were transmitted on UHG's behalf.[7] As such, and as the sender of the illegal facsimile advertisement, UHG has committed a tortious act within the state of Florida, and its motion to dismiss for lack of jurisdiction should be denied.

The TCPA grants recipients of unsolicited fax advertising the legal right to recover damages from the senders of those faxes. *See* 47 U.S.C. §§ 227(b)(1)(C), (b)(3).[8] Congress enacted the TCPA to limit two primary injuries: (1) the "shift[ing of] some of the costs of advertising from the sender to the recipient," and (2) the "occup[ation of] the

[7] Complaint at ¶¶ 21, 24, 27.

[8] Congress may "enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973).

recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax." H.R. REP. NO. 102-317, at 10. Federal courts unquestionably have subject matter jurisdiction over private suits arising under the TCPA. *See Mims v. Arrow Financial Svcs., LLC,* ___ U.S. ___, 132 S.Ct. 740, 753 (2012) ("Nothing in the text, structure, purpose or legislative history of the TCPA calls for displacement of the federal question jurisdiction U.S. district courts ordinarily have under 28 U.S.C. § 1331 … [b]ecause federal law [the TCPA] gives rise to the claim for relief Mims has stated and specifies the substantive rules of decision, the Eleventh Circuit erred in dismissing Mim's case.").

In 1995, the FCC, the agency responsible for implementation of the TCPA, clarified that the TCPA provided for direct liability for an entity "on whose behalf" goods or services were promoted by unsolicited fax advertisements. Specifically, the FCC Memorandum Opinion and Order "clarif[ied] that the entity or entities **on whose behalf** facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements, and that fax broadcasters are not liable for compliance with this rule."[9]

In 2006, the FCC issued a regulation, following notice and comment, similarly defining "sender" for purposes of the TCPA's ban on junk faxes.[10] Consistent with its prior interpretation of the statute, these regulations again defined "sender" as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or

[9] In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 10 FCC Rcd. at 12407 (emphasis added).

[10] In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 21 FCC Rcd. 3787, 3822 (2006) (report and order and third order on reconsideration).

services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10).[11] By construing the sender as the party "on whose behalf facsimiles are transmitted," the FCC has placed liability at the source of the offending behavior that Congress intended to curtail, rather than solely on the physical sender of the transmission.[12]

This definition of "sender" under the TCPA and its implementing regulations, pursuant to which UHG is ultimately liable for the transmission of illegal advertisements sent to Plaintiffs by UHA on UHG's behalf, has also been upheld by the Eleventh Circuit and other courts. In *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 781 F.3d 1245 (11th Cir. 2015), the Eleventh Circuit overturned a district court ruling that a plaintiff could only prevail under the TCPA against a delegating defendant on a theory of vicarious liability. In so holding, the Eleventh Circuit found, pursuant to the FCC regulations cited above, that a plaintiff may prevail under a theory of direct liability against the entity "on whose behalf" an unsolicited fax advertisement is sent or whose services are being advertised. *Id*. at 1254 ("We agree, and hold that a person whose services are advertised in an unsolicited fax transmission, and on whose behalf the fax is transmitted, may be held liable directly under the TCPA's ban on the sending of junk faxes.").

Pursuant to this well-established law, UHG can be held directly liable as the sender of the illegal facsimile advertisement here at issue. Plaintiff has alleged that the

---

[11] *See also* In Re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 10 F.C.C.R. 12391, 12407-08 (1995) (clarifying that "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements").

[12] *See* In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 10 FCC Rcd. at 12407.

subject advertisement was physically transmitted by UHG's wholly owned sales and distribution subsidiary (UHA) that advertised health insurance products, and was transmitted for UHG's benefit, and on its behalf.[13] As such, Plaintiff has sufficiently alleged that UHG has committed a tortious act within the state of Florida for purposes of personal jurisdiction, and its motion to dismiss for lack of jurisdiction should be denied. *See, e.g., Neurocare Institute of Central Florida, P.A. v. U.S. Capital Access, Inc.,* U.S. Middle District, Orlando Div., Case No. 6:13-CV-1233-ORL-31DAB (May 13, 2014) citing*, Affordable Healthcare, LLC. V. Protus IP Solutions, Inc.,* 2009 WL 749536, *3 (E.D. Mo. Mar. 19, 2009) (noting that the court had jurisdiction over TCPA claims of plaintiffs from within the forum state who had received unsolicited faxes); *Creative Montessori Learning Center v. Ashford Gear, LLC,* 2010 WL 3526691 (N.D. Ill. Sept. 2010) (holding that corporation who sent unsolicited facsimile advertisements in violation of the TCPA committed a tort and was amenable to suit in the forum state).

### B. UHG Solicits and Conducts Significant Business in the State of Florida Through UHG's Marketing and Distribution Subsidiary (UHA)

As laid out fully above, UHG is subject to the personal jurisdiction of this Court because, as the sender of the illegal facsimile advertisement at issue, it committed a tortious act within the state of Florida. *See* Fla. Stat. § 48.193(1)(a)(2); *Sarris*, 781 F.3d at 1254. However, even if this Court finds that UHG did not commit a tortious act within the state, UHG would still be subject to this Court's personal jurisdiction because "at or about the time of the injury … the defendant was engaged in solicitation or service activities within this state," through the activities of its marketing and distribution arm within Florida, UHA.

---

[13] Complaint at ¶¶ 8-13, 15.

Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there. *See Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000). "On the other hand, if the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity, then the subsidiary's business will be viewed as that of the parent and the latter will be said to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction." *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002) (quoting Charles Alan Wright Arthur R. Miller, Federal Practice and Procedure § 1069.4 (3d ed. 2002) (citations omitted)).

When a subsidiary like UHA is merely acting as the agent of a parent company such as UHG to advertise and/or sell its products, the parent may be considered to be doing business in the jurisdiction. *See Meier*, 288 F.3d at 1272. In *Meier*, the District Court for the Southern District of Florida dismissed claims again a Bahamian parent company who had alleged, as UHG does here, that it was not subject to Florida's personal jurisdiction based solely on the activities of its wholly owned U.S. subsidiary, which it claimed was a "legally separate entity." *Id*. at 1272-73.

The Eleventh Circuit reversed, holding that where, as here, a domestic subsidiary acts exclusively as an agent for a non-resident, parent corporation, "the activities of the domestic subsidiary [can] be imputed to the non-resident corporation for jurisdictional purposes." *Id*. ("The court may extend jurisdiction to any foreign corporation where the affiliated domestic corporation manifests no separate corporate interests of its own and functions solely to achieve the purpose of the dominant corporation.") (citing *State v. Am.*

*Tobacco Co.*, 707 So.2d 851, 855 (Fla. 4th DCA 1998).

In *Meier*, the Eleventh Circuit found that the defendant parent company was subject to the court's personal jurisdiction, based on the activities of its wholly owned domestic subsidiary, where the domestic subsidiary coordinated domestic purchases of the parent company's products, coordinated domestic advertising and marketing for the parent company, shared certain individuals in positions of financial leadership, and "[did] not undertake any business activity for anyone other than" the parent corporation. *Id.* (citing *Pappalardo v. Richfield Hospitality Servs., Inc.,* 790 So.2d 1226, 1228 (Fla. 4th DCA) (finding agency based on evidence that the various parent and subsidiary defendants were "a confusing conglomerate, and were essentially one and the same company both financially and structurally.")).

As in *Meier*, UHA acts exclusively as an agent for UHG. On UHG's website, UHG itself summarizes this sole purpose of UHA, stating:

> "[UHA] is the marketing arm of [UHG], and specializes in marketing a portfolio of uncompromising healthcare plans underwritten and insured by [UHG]'s family of insurance companies.
> …
> Contact us for more information on how you can begin your career with [UHA].

*See* Cooper Declaration, Ex. A at ¶ 5.

On another page, UHG's website likewise describes UHA as "the wholly-owned national health insurance distribution arm of [UHG]," informing customers that UHA sells only "individual health coverage and supplemental products underwritten by … wholly-owned subsidiaries of [UHG]," and describing UHA employees as "[UHG]'s captive Agent sales force." *See* Cooper Declaration, Ex. A at ¶ 6. While the affidavit submitted by UHG in support of its Motion baldly states that "[UHG] has not attempted

to procure or to solicit business from any business entity or individual in the state of Florida," UHG's website again suggests otherwise, providing contact information for nearly a hundred "captive agents" for "sales assistance" throughout the state of Florida. *See* Cooper Declaration, Ex. A at ¶¶ 3-4.

As in *Meier*, there is also an obvious co-mingling of financial and corporate leadership between UHA and UHG. The CEO and president of UHG is a current manager and previous CEO of UHA, while the current CEO of UHA is also UHG's Chief Marketing Officer. *See* Cooper Declaration, Ex. A at ¶ 6. Both UHG and UHA share the same principal corporate and mailing address in Fort Worth, Texas, and both companies are being represented by the same defense counsel in the instant action.

Moreover, the facsimile advertisement at issue, sent on behalf of UHG to recipients in Florida, served to direct recipients to websites advertising UHG's products and services. The contact information on the fax advertisement sent to Plaintiffs includes a web address, www.ushagent.com/bgoksu. The website is titled "USHEALTH Group | Family and Individual Health Coverage" and the header reads US Health Group America's Trusted Choice, along with the registered trademark symbol. *See* Cooper Declaration, Ex. A at ¶ 3. When the website is accessed without inclusion of the subdirectory "bgoksu," it forwards to www.ushealthfamily.com, which is a website titled "Family Health Insurance | Affordable Health Coverage for Individuals and Families |US Health Group," and the header also reads US Health Group America's Trusted Choice, along with the registered trademark symbol. *See id.* at ¶ 4. Both websites advertise UHG's products and service and provide the opportunity to get a quote for UHG's products and service. *See id.* at ¶ 5.

Based on the evidence submitted herein, it is clear that Plaintiffs have sufficiently alleged that UHG is a "mere instrumentality" of its parent company UHA, existing in Florida for no purpose other than to manage and coordinate UHG's marketing and sales efforts within the state. *See Meier*, 288 F.3d at 1273. As such, "[b]ecause the Florida long-arm statute provides general jurisdiction based on the activities of an agent," and because Plaintiffs have clearly alleged that UHG has conducted "substantial and not isolated activity" in the state of Florida through UHA for purposes of personal jurisdiction, UHG's motion to dismiss for lack of jurisdiction should be denied. *Id*.

### C. Plaintiff has Alleged Sufficient Minimum Contacts Between UHG and Florida to Satisfy the Due Process Requirements of the Fourteenth Amendment

"A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). The due process analysis itself involves a two-part inquiry in which the Court first considers whether defendant engaged in minimum contacts with the state of Florida, then considers whether the exercise of personal jurisdiction over defendant would offend traditional notions of fair play and substantial justice. *Madara v. Hall*, 916 F.2d 1510, 1515–16 (11th Cir. 1990).

Here, Plaintiffs have plainly alleged sufficient minimum contacts between UHG and the state of Florida in order to satisfy the minimal due process requirements of the Fourteenth Amendment. First, as discussed more fully above, Plaintiffs have alleged that UHG committed a statutory tort within Florida by sending a facsimile advertisement to recipients in Florida that violated the TCPA. This, by itself, is sufficient to satisfy due process. *See Crowe*, 506 F. Supp. 2d at 1121.

Due process is further satisfied here because Plaintiffs have shown and demonstrated that UHG conducts continuous and systematic business activities within Florida, through its sales force of approximately 100 Florida-based career sales agents, such that "the activities of the domestic subsidiary [can] be imputed to the non-resident corporation for jurisdictional purposes." *Meier*, 288 F.3d at 1272-73. As in *Meier*, and because all reasonable evidentiary conflicts must be resolved in favor of the Plaintiffs at the dismissal stage, Plaintiff has thus more than sufficiently alleged minimum contacts between UHG and the state of Florida so as to satisfy due process. *See id*. at 1275 ("For the purposes of jurisdiction, the Court must construe all reasonable inferences in favor of Plaintiffs. Based on the evidence previously discussed, it is reasonable to assume that the creation and operation of the Florida Subsidiaries is a mere corporate formality and that the Florida Subsidiaries are agents of the Sun Defendants. The Court finds that the Sun Defendants had continuous and systematic contacts with the forum state through the activities of the Florida Subsidiaries.").

In addition to a finding of continuous and systematic contacts, this Court must also determine whether the extension of jurisdiction comports with traditional notions of fair play and substantial justice. *See id*. at 1276. In doing so, the Court may properly look at: (1) the burden on UHG; (2) Florida's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See id*. (citing *Future Tech. Today v. OSF Healthcare Sys.*, 218 F.3d 1247, 1251 (11th Cir. 2000)).

The extension of personal jurisdiction to UHG comports with these traditional notions of fair play and substantial justice, particularly when the "burden" on UHG is compared to Plaintiffs' interest in obtaining effective relief. The named Plaintiffs herein are small, independently-owned and family-run firms which have been harmed by UHG's illegal marketing practices. By contrast, UHG is a multi-million dollar corporation that markets its insurance products throughout the country, actively markets its insurance products throughout the state of Florida through a sales force of approximately 100 Florida-based career sales agents, and which is currently being represented by the same Florida-based counsel as UHA. Moreover, both Florida and the interstate judicial system have a strong interest in seeing this matter resolved in Florida, as it is residents of Florida that have been targeted by UHG's illegal marketing practices as complained of herein. *See Licciardello*, 544 F.3d at 1288 (holding that a "Florida plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy."); *Meier*, 288 F.3d at 1276 ("Plaintiffs are Utah residents with a combined annual salary of $37,833. The Sun Defendants operate multiple luxury resorts … and spent between seven and eleven million advertising in the U.S. in 1998 alone. The burden on Defendants to litigate the matter in Florida is insignificant when compared with the burden on Plaintiffs … [t]he Court finds that jurisdiction in Florida would comport with traditional notions of fair play and substantial justice.").

## III. CONCLUSION

As argued fully herein, Plaintiff contends that this Court may extend personal jurisdiction over UHG because (i) UHG, as the sender of the illegal facsimile

advertisement, committed a tortious act within the state of Florida; (ii) UHG, through its website and wholly owned sales and distribution subsidiary (UHA), controls approximately one hundred agents soliciting sales of its insurance products in Florida, and thus solicits and conducts significant business in the state of Florida; and (iii) for these same reasons, UHG has more than minimum contacts within the state of Florida so as to satisfy due process.

WHEREFORE, Plaintiffs respectfully request that this Court deny UHG's motion to dismiss for lack of personal jurisdiction, and allow this case to proceed on its merits.

Respectfully submitted,

Shawn A. Heller, Esq.
Florida Bar No. 46346
shawn@sjlawcollective.com
Joshua A. Glickman, Esq.
Florida Bar No. 43994
josh@sjlawcollective.com

Social Justice Law Collective, PL
P.O. Box 70327
Washington, DC 20024
Tel: (202) 709-5744

Peter Bennett
Florida Bar No. 68219
peterbennettlaw@gmail.com
Richard Bennett
Florida Bar No.150627
richardbennett27@gmail.com

Bennett & Bennett
1200 Anastasia Avenue
Office Suite #360
Coral Gables, Florida 33134
Tel: (305) 444-5925

By: *s/ Richard Bennett*
Richard Bennett

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, on this 6th day of January, 2016, which will send a notice of electronic filing to all attorneys of record.

By: *s/ Richard Bennett*
Richard Bennett, Esq.