**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

WALTER STRATTON BAGG; and
COOPER LAW, P.A.,

      Plaintiffs,

v.                                                  Case No. 6:15-cv-1666-Orl-37GJK

USHEALTH GROUP, INC.; and
USHEALTH ADVISORS, LLC,

      Defendants.

**ORDER**

This cause is before the Court on the following:

1. Defendant USHealth Group, Inc.'s Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction (Doc. 20), filed November 30, 2015;

2. Plaintiffs' Response to USHealth Group, Inc.'s Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction (Doc. 30), filed January 6, 2016;

3. Defendant, USHealth Group, Inc.'s Reply to Plaintiff's Response in Opposition to USHealth Group, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 40), filed January 27, 2016; and

4. Defendant US Health Advisors, LLC's Motion for Leave to Amend Its Affirmative Defenses and Incorporated Memorandum of Law (Doc. 42), filed February 26, 2016.

Upon consideration, the Court finds that the motions are due to be denied.

## BACKGROUND[1]

Defendant USHealth Group, Inc. ("**USH Group**")—through its subsidiaries, including Defendant USHealth Advisors, LLC ("**USH Advisors**")—sells individual health insurance plans that are underwritten by USH Group's wholly owned subsidiary, The Freedom Life Insurance Company of America. (Doc. 1, ¶¶ 8–11.)

On January 27, 2015, USH Advisors—"on behalf of USH Group"—sent a facsimile ("**fax**") advertisement to Plaintiff Walter Stratton Bagg and Plaintiff Cooper Law P.A.'s fax machine, promoting USH Group's health insurance products ("**the Fax**"). (*Id.* ¶¶ 12–13.) The Fax "failed to contain a clear and conspicuous opt-out notice." (*Id.* ¶ 14.)

On October 8, 2015, Plaintiffs—"on behalf of themselves and a class of all persons similarly situated"—filed a one-count Complaint ("**Complaint**") against Defendants, seeking damages for Defendants' alleged violation of the Telephone Consumer Protection Act ("**TCPA**"). (*See id.* ¶¶ 1, 8–10.) USH Advisors answered the Complaint.[2] (Doc. 43.) USH Group moved for dismissal pursuant to Federal Rule of Civil Procedure

---

[1] The facts set forth in this section are taken from the Plaintiffs' Complaint (Doc. 1), taken as true, and construed in the light most favorable to Plaintiffs, solely for the purpose of resolving the pending motion to dismiss. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). They are not the Court's findings of fact.

[2] USH Advisors filed the first iteration of its answer and affirmative defenses on November 30, 2015. (Doc. 19.) On February 26, 2016, USH Advisors: (1) moved for leave to file an amended answer, indicating that it unsuccessfully attempted to confer with Plaintiffs' counsel pursuant to Local Rule 3.01(g) (Doc. 42 ("**First Motion for Leave**")); and (2) contemporaneously filed an amended answer and affirmative defenses (Doc. 43 ("**Amended Answer**")). Two days later, USH Advisors filed a renewed, unopposed motion for leave to file an amended answer, reflecting that Plaintiffs did not oppose the filing of an amended answer. (Doc. 44 ("**Amended Motion for Leave**").) The Court granted the Amended Motion for Leave and accepted the Amended Answer as the operative pleading. (Doc. 45.) Accordingly, the First Motion for Leave (Doc. 42) is due to be denied as moot.

12(b)(2) for lack of personal jurisdiction ("**Motion**"). (Doc. 20.) Plaintiffs responded to the Motion (Doc. 30), and USH Group filed a permitted reply (Doc. 40; *see also* Docs. 36, 38). The matter is now ripe for the Court's adjudication.

## STANDARDS

A plaintiff seeking to establish personal jurisdiction over a nonresident defendant "initially need only allege sufficient facts to make out a prima facie case of jurisdiction." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999). If unrefuted, the Court accepts the well-pled facts as true. *Id.* at 1215. However, if the defendant submits non-conclusory declarations refuting the well-pled jurisdictional facts, then the burden "shifts back to the plaintiff to produce evidence supporting jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). If the record evidence conflicts, the Court must "construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

A defendant may "dispute personal jurisdiction" by filing a Rule 12(b)(2) motion, arguing that a plaintiff cannot meet its ultimate burden to establish that: (1) a basis for jurisdiction exists under Florida's Long-Arm Statute, Florida Statute § 48.193 ("**Florida Statute**"); and (2) defendant's contacts with Florida are sufficient to satisfy the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (requiring that both prongs be satisfied for a court to exercise personal jurisdiction over a nonresident defendant).

## DISCUSSION

Plaintiffs' non-conclusory allegations pertinent to personal jurisdiction over USH Group—a nonresident defendant—include that: (1) USH Group sells individual

health insurance plans through its subsidiaries in the United States; (2) USH Group's wholly owned subsidiary—USH Advisors, a Texas corporation authorized to do business in Florida—sent faxes in violation of the TCPA to Plaintiffs and others similarly situated throughout Florida "for the benefit of [USH Group]"; and (3) therefore, USH Group sent faxes in violation of the TCPA in Florida. (*See* Doc. 1, ¶¶ 5–8, 10, 12–15, 21, 27.)

USH Group refutes the allegations of personal jurisdiction with affidavit testimony that USH Group is a "separate and distinct entity form [sic] [USH Advisors]" and that USH Group: (1) "has neither requested, initiated, nor facilitated the sending of facsimile advertisements to any residents of Florida"; (2) has "never entered into a contract for the purpose of sending facsimile advertisements to residents of Florida"; (3) "is not licensed to do business in" Florida; (4) "has not attempted to procure or solicit business from any individual or business entity within" Florida; (5) does not maintain corporate offices, own property, or pay taxes in Florida; and (6) "does not have any bank accounts, employees, mail box addresses, or telephone numbers in" Florida ("**Defense Affidavit Testimony**"). (*See* Doc. 20-1.) Thus, USH Group argues that the Court lacks a statutory basis for jurisdiction under the Florida Statute. (Doc. 20, pp. 5–12.) Alternatively, USH Group argues that, even if the Court finds a basis for jurisdiction under the Florida Statute, USH Group lacks sufficient minimum contacts with Florida such that Due Process is not satisfied. (*Id.* at 13–18.) Plaintiffs counter that their supporting affidavit and the Fax itself establish that: (1) USH Group was the sender of the Fax under the TCPA; (2) USH Group committed a tortious act within Florida by sending the Fax; and (3) USH Group has sufficient minimum contacts in Florida to satisfy due process based on its subsidiary's' "significant business" conduct and solicitation in Florida. (Doc. 30; *see also* Doc. 30-1.)

In accordance with controlling law, the Court will first address whether Plaintiffs have met their burden to establish a basis for personal jurisdiction under the Florida Statute. *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V*, 598 F.3d 802, 807 (11th Cir. 2010). If so, then the Court will analyze whether Due Process is satisfied. *Id.*

## I.     The Florida Statute

The Florida Statute confers upon the Court specific personal jurisdiction ("**specific jurisdiction**") over any nonresident who commits a tortious act within the state.[3] Fla. Stat. § 48.193(1)(a)(2); *Madara*, 916 F.2d at 1514. A defendant's physical presence is not necessary to commit a tortious act in Florida. *Calder v. Jones*, 465 U.S. 783, 789 (1984). "The commission of a tort for purposes of establishing long-arm jurisdiction does not require physical entry into the state, but merely requires that the place of *injury* be within Florida." *Future Tech. Int'l, Inc. v. Tae II Media, Ltd.*, 944 F. Supp. 1538, 1558 (S.D. Fla. 1996); *see also Posner*, 179 F.3d at 1216–17. By alleging that USH Group sent them the Fax, Plaintiffs have sufficiently established that USH Group committed a tortious act that caused injury in Florida.

Sending a fax in violation of the TCPA constitutes a tort. Indeed, a tortious act "may result from [a defendant's] telephonic, electronic, or written communications into [a] state." *Crowe v. Paragon Relocation Res., Inc.*, 506. F. Supp. 2d 1113, 1121 (N.D. Fla. 2007). "Courts have consistently held that the TCPA protects a species of privacy interest in the sense of seclusion," and recognize that the sending of an unsolicited fax constitutes an

---

[3] Specific jurisdiction "authorizes jurisdiction over causes of action arising from or related to the defendant's actions within [the forum state]," whereas "[g]eneral personal jurisdiction is based on a defendant's substantial activity in [the forum state] without regard to where the cause of action arose." *Louis Vuitton*, 736 F.3d at 1352.

5

invasion of privacy. *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1249 (10th Cir. 2006) (collecting cases), *abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co.*, 545 F. App'x 750, 753 (10th Cir. 2014); *see also* TCPA of 1991, Pub. L. No. 102–243, §2(9), (14) (recognizing the privacy rights implicated by unsolicited telemarketing practices). Thus, the alleged sending of the unsolicited Fax constitutes a tortious act.

Plaintiffs have established that USH Group committed the tort at issue. The Federal Communications Commission ("**FCC**") defines a "sender" of "an unsolicited advertisement to a telephone facsimile machine" as "the entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 U.S.C. § 64.1200(f)(10); *see also Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1257 (11th Cir. 2015) (deferring to the FCC's construction of the TCPA and definition of "sender"). Upon consideration of the Fax and Plaintiff's supporting affidavit (*see* Doc. 30-1)[4]—and drawing all inferences in favor of Plaintiffs, *see Meier*, 288 F.3d at 1269—the Court finds that USH Advisors sent the Fax to advertise USH Group's products and services on behalf of USH Group. Indeed, the link provided in the Fax connects to a website with USH Group's logo and indicates that the agent on the website sells USH Group's insurance. (*See* Doc. 30-1, p. 5 (directing recipients of the Fax to www.ushagent.com/bgoksu, which identifies the agent as one who sells USH Group's insurance)); *see also Helping Hand Caregivers, Ltd. v. Darden Rests., Inc.*, No. 14-cv-10127, 2015 WL 2330197, at *2 (N.D. Ill. May 14, 2015) (finding

---

[4] A copy of the Fax was attached as Exhibit A to the Complaint (Doc. 1-1) and as Exhibit 1 to Plaintiffs' supporting affidavit (Doc. 30-1, p. 5).

that the face of a fax supported the inference that the fax was sent on behalf of the defendant company—even though it came from a different company's fax number and directed the recipient to contact a person from a different company—because it bore the defendant company's logo and suggested that the defendant company and the other company were working together). Therefore, Plaintiffs sufficiently establish that USH Group is a "sender" of the Fax for purposes of the TCPA. *See Palm Beach Golf Ctr.*, 781 F.3d at 1254 (holding that "a person whose services are advertised in an unsolicited fax transmission, and on whose behalf the fax is transmitted, may be held liable directly under the TCPA's ban on the sending of junk faxes").

Moreover, the tortious act caused injury in Florida. Under the TCPA, a plaintiff is injured when it receives a fax that is noncompliant with or in violation of the TCPA, making the plaintiff's fax machine "unavailable for legitimate business messages while processing . . . the junk fax." *Palm Beach Golf Ctr.*, 781 F.3d at 1251–52 (quoting H.R. Rep. No. 102-317, at 10 (1991)). Because the Fax was received in Florida, the injury occurred in Florida. Thus, the Court may exercise specific jurisdiction over USH Group under the Florida Statute. *See* Fla. Stat. § 48.193(1)(a)(2).

**II.     Due Process**

Having found that the Florida Statute confers specific jurisdiction over USH Group, the Court now turns to the remaining question—whether exercising that jurisdiction comports with Due Process. *Louis Vuitton*, 736 F.3d at 1355. The Court applies a three-part test to determine whether an exercise of specific jurisdiction comports with Due Process, which examines:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum;

7

> (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and
> (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Id.* (citations omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (citation omitted).

Regarding the first prong, the relatedness inquiry turns on "the direct causal relationship between the defendant, the forum, and the litigation." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010). Plaintiffs' TCPA claim arises out of USH Group's act of sending the Fax to Plaintiffs in Florida. (*See* Doc. 1.) A "direct causal relationship" therefore exists between USH Group, Florida, and this action; thus, the relatedness inquiry is satisfied. *See Louis Vuitton*, 736 F.3d at 1355.

With respect to the second prong, because this case involves an intentional tort, there are two available tests for determining purposeful availment: (1) the *Calder* "effects test"; and (2) the traditional "minimum contacts" test. *See id.* at 1356–58 (citing *Calder*, 465 U.S. 783). In this case, purposeful availment exists under the *Calder* effects test. Under *Calder*, "a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Louis Vuitton*, 736 F.3d at 1356; *see also Calder*, 465 U.S. at 789–90. The *Calder* effects test requires that the tort: (1) be intentional; (2) be aimed at the forum state; and (3) cause harm that the defendant should have anticipated would be caused in the forum state. *Sticky Holsters, Inc. v. Ace Case Mfg., LLC*, No. 2:15-cv-648-FtM-29CM,

2016 WL 1436602, at *5 (M.D. Fla. Apr. 12, 2016) (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1286–87 (11th Cir. 2008)). Purposeful availment is "relatively easy to establish in intentional tort cases." *Exist, Inc. v. Woodland Trading Inc.*, No. 14-61354-CIV, 2015 WL 881407, at *4 (S.D. Fla. Mar. 2, 2015) ("Essentially, a person who commits an intentional tort may be subject to personal jurisdiction in the state where the victim of that tort lives because, by directing the effects of the tort at the victim's home, the tortfeasor has purposefully availed himself or herself of the jurisdiction of the victim's state.").

  Construing all reasonable inferences in favor of Plaintiffs, the allegations in the Complaint provide that: (1) USH Advisors intentionally sent the Fax to Plaintiffs, as it "conducts business" in Florida and sent the Fax "on behalf of" USH Group to promote USH Group's products and services (Doc. 1, ¶¶ 4, 7, 12, 13, 21); (2) USH Advisor's actions were aimed at the forum state, as Plaintiffs conduct their business in Florida (*id.* ¶¶ 5, 21); and (3) the Fax failed to satisfy the requirements of the TCPA, and therefore USH Advisors should have known that it would cause—and did cause—harm in Florida when sent to Plaintiffs (*id.* ¶¶ 13–16, 21). These allegations are sufficient to establish USH Advisors' purposeful availment under the *Calder* effects test. *See Licciardello*, 544 F.3d at 1287–88 (finding allegations of "the commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were felt in the forum" sufficient to satisfy the *Calder* effects test); *Sticky Holsters*, 2016 WL 1436602 at *5 (conducting a similar analysis and reaching the same conclusion in the context of false representations); *see also Exist*, 2015 WL 881407 at *4 (finding that the purposeful availment prong was satisfied because "the effects of [the intentional tort] were felt in

Florida"). As USH Advisors' actions can be imputed to USH Group, *see* Fla. Stat. § 48.193(1)(a) (extending specific jurisdiction to claims arising from specific acts of an agent), it follows then that USH Group purposefully availed itself of the jurisdiction of the Florida forum.[5]

Finally, under the third prong, the exercise of jurisdiction over USH Group comports with traditional notions of fair play and substantial justice. *See Licciardello*, 544 F.3d at 1288. In reaching this conclusion, the Court has considered the burden on USH Group, Florida's interest in adjudicating the dispute, Plaintiffs' interests in obtaining convenient and effective relief, and the judicial system's interest in resolving the dispute. *See id.* at 1284 (identifying the factors the court must consider). Any burden that this litigation may impose on USH Group as a foreign corporation is outweighed by the fact that: (1) "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida," *see Licciardello*, 544 F.3d at 1288; and (2) Floridians injured by the intentional misconduct of a nonresident should not be required to travel to the nonresident's state of residence to obtain a remedy, *see id.*; *see also Calder*, 465 U.S. at 1487. Further, evidence that USH Group is a foreign

---

[5] Despite the Defense Affidavit Testimony, the reasonable inference in favor of Plaintiffs is that USH Advisors was acting as an agent of USH Group when it sent the Fax because it USH Advisors is a wholly-owned subsidiary company through which USH Group carries out its business and sells its products. *See Meier*, 288 F.3d at 1272 ("[I]f the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction . . ., then the subsidiary's business will be viewed as that of the parents and the later will be said to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction.") (citation omitted). Agency is also established in that USH Advisors works on behalf of USH Group by selling and promoting USH Group's products and services. *See id.* ("Personal jurisdiction over affiliated parties, whether a parent or another related subsidiary, is warranted when the resident corporation acts on behalf of those foreign affiliates.").

corporation without offices or employees in Florida (*see* Doc. 20-1) is alone insufficient to support the contention that the Court's exercise of jurisdiction would violate Due Process. *See Louis Vuitton*, 736 F.3d at 1355 (stating that it is the defendant's burden to make a "compelling case" that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice).

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant USHealth Group, Inc.'s Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction (Doc. 20) is **DENIED**.

2. Defendant US Health Advisors, LLC's Motion for Leave to Amend Its Affirmative Defenses and Incorporated Memorandum of Law (Doc. 42) is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on April 20, 2016.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record