| | |
|---|---|
| **From:** | Sliva, Debra |
| **To:** | Silvia, Lisa |
| **Subject:** | FW: BIRSEN, very important... Fwd: FW: CT Service received today - Florida Fax Attorney Demand |
| **Date:** | Wednesday, February 25, 2015 8:47:43 AM |
| **Attachments:** | A2052816-39E6-467D-8544-2876D9137F5A.png |

**From:** birsen goksu [mailto:birsengoksu@gmail.com]
**Sent:** Wednesday, February 25, 2015 8:46 AM
**To:** James Hmielewski Forwarding contact
**Cc:** BIRSEN GOKSUSAVLUK; BILL SHELTON; MARA BROCKMAN; TARAINA MCCANTS; Sliva, Debra; TRAVIS YODER
**Subject:** Re: BIRSEN, very important... Fwd: FW: CT Service received today - Florida Fax Attorney Demand

1. Where did the agent get the fax number to which this was sent? One possible exception to the TCPA would be if the recipient voluntarily placed their number in a directory

I have found an efax company online where I can send marketing materials via efax. I used Manta.com to find local businesses and looked for ones that had fax numbers on their personal website and efaxed the flyer

2. Did the agent have an established business relationship with the recipient of the fax? This is a possible exception to enforcement of the TCPA.

No, I did not. I randomly fax my flyer to this company which I found on manta.com

3. Who actually sent the fax? Did the agent send it, or did they contract with some form of fax blasting company? If so, what representations and warranties were made by the fax blasting company as to (i) the legality of the fax, and (ii) indemnification against claims like this?

I used fax87 which where I found through google search. I talked to them about my idea of faxing flyers to local businesses and they offered me a product that would be a good fit. I do not know if they have any indemnification against claims like this. I uploaded the flyer and put in the fax number and the efax company (fax87) is the one who faxed it out.

4. Who authorized this agent to do this? We obviously do not authorize any fax blasts, so I am concerned about

Exhibit 5

whether this is a "lone wolf", or whether the practice is being encouraged in a particular region. Regardless, you need to communicate to the field that fax blasts are not permissible, are in violation of their contract, can lead to termination and potential significant liability, and are not covered under the terms of their E&O coverage.

This is completely my idea. I thought it was another way that I can market myself and reach out to people. I did not know that this was illegal. I had so many prospective clients (leads) that I spoke to over time and they always asked me to fax some information to them and thats how I got the idea of doing the fax blast. I thought it was legal.

5. Where did the form of the ad used come from? Given the content, and misspellings, such as "pe-existing conditions", and things we would not authorize, such as "cross state lines" and "small group plans", this ad needs to be shut down immediately, regardless of the medium of distribution. A reminder to the field that they may only use ads that previously approved in advance, by us, should probably be included in the field bulletin regarding fax blasts.

I personally created the add myself. I copy paste information from our website as you probably have notice. No one approved this flyer from my leaders. They didn't even know I was doing this.

On Wed, Feb 25, 2015 at 9:21 AM, jim hmielewski <ushealthjim@gmail.com> wrote:
Birsen,
Please respond immediately to the questions below and get back to me ASAP.
Answer each question very detailed. Thank you.
We do need this back as soon as you can.
JIm
-