IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WALTER STRATTON BAGG, ESQ and COOPER LAW P.A., individually and on behalf of all others similarly situated,

Case No.: 6:15-cv-1666 ORL-37-GJK

vs.

Plaintiffs,

USHEALTH GROUP, INC., A Delaware corporation, and US HEALTH ADVISORS, LLC, a Texas limited liability company,

Defendants.

______________________________/

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' LIMITED MOTION TO COMPEL WITH INCORPORATED MEMORANDUM OF LAW**

Defendant, USHEALTH ADVISORS, LLC ("UHA") and USHEALTH GROUP, INC. ("UHG") (hereinafter collectively "Defendants"), by and through the undersigned counsel, hereby file this Response in Opposition to Plaintiffs' Limited Motion to Compel with Incorporated Memorandum of Law and in support thereof states as follows:

## I. FACTUAL BACKGROUND

1. The instant putative class action is premised upon alleged facsimile advertisements sent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA).

2. As part of their Class Action Complaint, the putative class representatives, Walter Stratton Bagg, Esq. and Cooper Law, P.A. ("Plaintiffs") seek to certify a proposed nationwide class of individuals as follows:

> All persons and entities in the United States who were sent one or more facsimiles to a telephone facsimile machine after September 30, 2011, advertising Defendants' products and/or services, where the advertisement failed to contain an opt out notice required by 47 C.F.R. 64.1200(a)(4)

*See* Complaint, ¶ 18 (D.E. 1). The Plaintiffs further claim that, "upon information and belief," the proposed class "is in excess of 50 persons." *Id.* at ¶ 19.

3. In support of these allegations, Plaintiffs attached one Exhibit to the Complaint—a purportedly unsolicited advertisement, alleged to have been received by the Plaintiffs by facsimile at their Orlando, Florida shared facsimile machine and bearing the name of a (now former) UHA independent sales agent, Birsen Goksu, inclusive of her Orlando, Florida phone number. *Id.* ¶ 13; Exhibit A to Plaintiffs' Complaint. Plaintiffs did not attach any documentation of facsimiles to other Florida residents nor any documentation of facsimiles to residents of any other State.

4. Plaintiffs have also propounded various initial and supplemental discovery requests presumptively seeking information and documentation identifying, in support of the putative "nationwide" class Plaintiffs filed a Class Action Complaint to certify, senders and recipients of allegedly unsolicited facsimiles; of "fax blast companies" purportedly utilized by the Defendants; and of unsolicited facsimiles purportedly sent by or on behalf of the Defendants, among various other requests.

5. As discussed in detail *infra*, Defendants investigated the Plaintiffs' allegations long before suit was filed, and further investigated in effort to gather responsive information

and documentation in order to fully respond to Plaintiffs' discovery requests. Indeed, Defendants have fully responded to Plaintiffs' discovery requests.[1]

6. However, Plaintiffs have filed a "Limited Motion to Compel" (D.E. 61) [hereinafter "Motion"] seeking an Order from this Court compelling various onerous actions from the Defendants inclusive of multiple unduly burdensome requests under the premise that the Defendants have, among other things, failed to conduct a reasonable inquiry to determine the existence of responsible information and/or documentation. The latter accusation is far from the case as will be discussed herein.

7. Moreover specifically, on the premise that Plaintiffs want to certify a nationwide class dating back to September 2011, Plaintiffs have asked this Court to order Defendants to do the following, among other things:

(1) search the company email records of their employees, agents, and contractors to discover communications between their employees, agents and/or contractors and third-party fax broadcasters . . . and produce such documents that relate or refer to the transmission of fax advertisements;

(2) conduct a reasonable and thorough inquiry to determine whether fax advertising was engaged in by any other of Defendants' employees, agents and/or contractors, which should include, at minimum, contacting each employee, agent, and contractor by email or phone to ask each whether they ever engaged in fax advertising;

(3) describe with particularity the process and results of the investigation; and

[1] Defendants note that, contemporaneous with the filing of this Response, verified answers to Plaintiffs' First and Second Interrogatories to US Health Advisors, along with verified answers to Plaintiffs' First Interrogatories to US Health Group, have been served on the Plaintiffs.

(4) amend their responses to the nine discovery requests referenced in the Motion after engaging in the activities described above.

8. For the reasons set forth herein, the Plaintiffs have no basis in fact to justify these extraordinary requests and, even if they do, such a basis is severely outweighed by the burden such requests would place upon the Defendants to comply.

**The Defendants' Pre-Suit Investigation of the Plaintiffs' Claims**

9. UHA is a wholly-owned subsidiary of UHG. *See* Exhibit A, Affidavit of James L. Jackson, Jr., ¶ 3. UHA sells health insurance policies through independent sales agents. *Id.* It has **never** been the policy of UHG or UHA to send unsolicited facsimile advertisements. *Id.*, ¶ 4.

10. UHA independent sales agents are independent contractors which, pursuant to their contracts, among other things, are permitted to exercise their own judgment in the time and manner of performing services and in choosing the persons they choose to market to—provided the independent sales agent at all times follows local, state and federal laws. *See* Exhibit B, UHA Agent Agreement of Birsen Goksu, ¶ 1.

11. Since its inception, all UHA independent sales agents have been provided with a copy of the company policy tiled "National Do-Not-Call List – Background and Frequently Asked Questions" discussing the TCPA and prohibiting telephone solicitations to individuals on "do-not-call" lists and further prohibiting the sending of unsolicited facsimiles. *See* Exhibit C, p 10. This policy expressly states that "Faxes of unsolicited advertisements, solicitations and invitations to inquire are prohibited." *Id.*; *see also* Exhibit A, ¶ 5.

12. In 2015, prior to the filing of the Complaint, Plaintiffs notified the Defendants of their individual claims. *Id.* ¶ 6, 9. In turn, the Defendants commenced an investigation of the Plaintiffs' individual claims not only to determine their veracity, but also the scope of any other potential facsimiles that may have been sent. *Id.*, ¶¶ 7-12; *see also* Exhibit D, February 25, 2015 e-mail correspondence from Birsen Goksu.

13. This pre-suit investigation revealed that Birsen Goksu was a "lone wolf"; the idea to send a "fax blast" was "completely" her idea; she personally created the facsimile "flyer" herself; it was not approved or authorized by any of her supervisors; and she used a "fax blast" company named Fax87 to send out the facsimile. *See* Exhibit D. Notably, this investigation revealed no basis to believe Ms. Goksu acted with anyone else; no basis to believe Ms. Goksu acted in accord with a company policy; and no basis to believe any other agents sent any facsimile advertisements (since she created the "flyer" herself). *Id.* In fact, Ms. Goksu even stated as follows:

> "This is completely my idea . . . I had so many prospective clients (leads) that I spoke to over time and they always asked me to fax some information to them and thats (sic) how I got the idea of doing the fax blast . . . I personally created the add (sic) myself. I copy paste information from our website . . . No one approved this flyer from my leaders. They didn't even know I was doing this."

*Id.*

**<u>Investigation in Response to Plaintiffs' Discovery Requests</u>**

14. As indicated above, since the filing of the instant lawsuit, Plaintiffs have propounded various discovery requests upon the Defendants geared toward gathering information or documentation of other potentially TCPA-violative facsimile advertisements sent by or on behalf of the Defendants.

15. In responding to this discovery, Defendants not only produced documentation of their pre-suit investigation (discussed above), but conducted a further inquiry for responsive information and/or documentation and accordingly produced what this investigation revealed. Contrary to Plaintiffs' blanket assertions in their Motion to Compel, the Defendants undertook the following efforts to respond to the various discovery requests and elicited (and disclosed/produced) the following information:

a. Confirmed with Birsen Goksu that she used a company named Fax87 to send facsimiles; that she no longer had any records of the facsimiles that were sent, nor how many were sent, nor to whom they were sent; she no longer had any records of her account; and she advised she did not send any more than 30 facsimiles, if at all. *See* Exhibit E, November 25, 2015 Correspondence between Birsen Goksu and James L. Jackson, Jr.[2]; Exhibit A, ¶¶ 8-12.

b. Produced to the Plaintiffs the results of the Defendants' pre-suit investigation.

c. Consulted the Chief Marketing Officer of UHA, Brian Clark (Ex. A, ¶ 8);

d. Consulted the Chief Financial Officer of UHG, Cynthia Koenig (*Id.*);

e. Communicated with Ms. Goksu's division leader, James Hmielewski; (*Id.*);

f. Communicated with all eight of UHA's current Regional Sales Leaders, which oversee the entirety of UHA's field force nationally consisting currently of 1,966 independent sales agents in 31 states, and all such team leaders confirmed there were unaware of any facsimile advertisements sent by any such agents in within their respective regions. *See* Exhibit A, ¶¶ 8-13, 16. Furthermore, these eight Regional

[2] All of this information was produced to the Plaintiffs.

Sales Leaders all confirmed none have authorized "fax blasts" since September 2011, and further confirmed they are not aware of any such "fax blasts" sent by any agent within their respective regions. *Id.*, ¶ 16.

g. Communicated further with Mr. Goksu and requested that he request all correspondence exchanged between her and Fax87, the purported fax blasting company she utilized, to which Ms. Goksu indicated Fax87 was no longer in possession of such documentation. *See* Exhibit E.

h. Utilized the services of a UHA computer network engineer to recreate the email account previously maintained for Ms. Goksu at the www.USHAdvisors.com domain e-mail account (Ms. Goksu was not a current agent at that time, and UHA does not maintain current email accounts for terminated agents, so it had to be recreated from archived backup tapes) and specifically for key terms related to facsimiles. *See* Exhibit G, Affidavit of Terry Shottenkirk, ¶ 6-13.

16. Moreover, over the course of discovery in the instant litigation, the Plaintiffs deposed Ms. Goksu on February 16, 2016. During her deposition, she confirmed that she acted alone and without permission; she confirmed that she only used her GMAIL e-mail account for her communications with Fax87 (and not her prior accounts at www.USHAdvisors.com); she confirmed that she personally gathered all facsimile numbers she utilized from a website called Manta.com; and she confirmed that all the facsimile numbers of local businesses she searched for were in Orlando, Florida and manually input by Ms. Goksu into the fax87.com website portal. *See* Exhibit F, February 16, 2016 Deposition of Birsen Goksu, pp. 38-39; 71-72; 79; 91.

17. It was only during her deposition that, for the first time, and contrary to her March 2015 e-mail correspondence, Ms. Goksu claimed she had authority to send facsimile advertisements. *Id.* pp. 63; 79-80. The Defendants dispute such authority. However, there is no dispute that Ms. Goksu acted alone and the facsimiles she sent, if at all, were her idea. **There is no evidence of any other independent sales agents in Florida, let alone any other State, sent facsimile advertisements.**

18. The Plaintiffs are currently seeking to subpoena Google to acquire Ms. Goksu's GMAIL e-mail account records pertaining to any exchange she had with Fax87 and Defendants have asserted no objection to same. The Court recently entered an Order directing the production of such documents by Google. (D.E. 68).

19. Despite there being no factual basis to (1) suggest anyone other than Ms. Goksu sent facsimile advertisements; (2) no factual basis suggesting anyone outside of Florida sent facsimile advertisements; and (3) no factual dispute that sending facsimile advertisements was against company policy and the contracts of independent sales agents, Plaintiffs continue to proceed in seeking certification of a nationwide class and now seek to compel Defendants to engage in various unduly burdensome actions to "fish" for information supporting their claims.

## II. MEMORANDUM OF LAW

20. As noted above, Plaintiffs have no basis in fact, particularly in light of what discovery has revealed in this case, to pursue these unduly burdensome requests. There is no dispute that facsimile advertisements were against company policy; there is no dispute that

Ms. Goksu acted alone; and there is no dispute that she only sent facsimiles, if at all, through Fax87 in the Orlando, Florida area.

21. Despite this, Plaintiffs are moving to compel a burdensome "investigation" on the mere suspicion, with no supporting evidence, that the Defendants are withholding information or failing to conduct a reasonable inquiry. However, "[t]he fact that a party may disbelieve or disagree with a response to a discovery request . . . is not a recognized ground for compelling discovery, absent some indication beyond mere suspicion that the response is incomplete or incorrect."). *Gray v. Faulkner*, 148 F.R.D. 186, 189 (N.D. Ind. 1992); *Meeks v. Parsons*, 2009 WL 3003718 at 3 (E.D. Cal. Sept. 18, 2009).

22. Moreover, Plaintiffs' insistence on such overbroad and unduly burdensome requests are a tacit admission that Plaintiffs had no basis in fact to seek certification of a nationwide class when filing their Complaint. In particular, Federal Rule of Civil Procedure 11 requires, *inter alia*, the following when making representations to the Court:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . .
>
> (3) **the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery** . . . .

Fed. R. Civ. P. 11 (emphasis added).

23. "Rule 11 requires a party to conduct a reasonable inquiry into the factual and legal basis for the claims asserted . . . [a]nd Rule 11 speaks in terms of pleadings, motions,

and other papers—not in terms of their component parts." *Johnson v. Metromedia Corp.*, 1993 WL 34819 at 2 (N.D. Ill. Feb. 11, 1993) (citing *Schaffer v. Chicago Police Officers*, 120 F.R.D. 514-515 (N.D. Ill. 1988). To this end, "[t]he federal courts prohibit the filing of a lawsuit to conduct a fishing expedition." *Clean Air Council v. Dragon Intern. Group*, 2008 WL 4452353 at 3 (M.D. Penn. Sept. 30, 2008) (further noting the plaintiff proceeded "as if the mere filing of a lawsuit authorizes discovery against the defendants to see if a cause of action exists."); *see also Pannonia Farms, Inc. v. USA Cable*, 2004 WL 1794504 at 4 (S.D. N.Y. Aug. 10, 2004) (recognizing the plaintiff's admission of lack of evidence before filing suit "clearly" ran afoul of Fed. R. Civ. P. 11 and warranted the court's rejection of plaintiff's invitation for a "fishing expedition.").

24. Indeed, Plaintiffs are correct in their Motion when claiming corporate defendants must conduct a reasonable inquiry and respond based upon corporate knowledge. However, in spite of Plaintiffs' blanket assertions no such inquiries were made and that none of the discovery responses at issue were based upon corporate knowledge, the Defendants *unquestionably* conducted a reasonable inquiry and responded to Plaintiffs' discovery based upon corporate knowledge.

25. Specifically, the Defendants diligently undertook **many** steps during both their pre-suit investigation and specifically in response to Plaintiffs' discovery requests, to wit: (1) communicated with officers of UHG and UHA; communicated with the eight Regional Sales Leaders overseeing independent sales agents in all regions regarding potential "fax blasts"; communicated with Ms. Goksu regarding the extent of her actions and whether she acted as a "lone wolf"; further requested that Ms. Goksu secure information from Fax87;

and engaged the services of a UHA computer network engineer to investigate Ms. Goksu's UHA e-mail address for key terms related to facsimiles. *See* Exhibit A, ¶¶ 7-13, 16; Exhibit D; Exhibit E; Exhibit G, ¶¶ 6-13.

26. This investigation revealed, among other things, there were no "facsimiles" or "other facsimiles" (as defined in Plaintiffs' discovery requests) reasonably within the Defendants' custody, possession or control outside of the lone purported facsimile attached as Exhibit A to the Complaint noted *supra*. *See* Exhibit A, ¶ 11. Moreover, no third party facsimile broadcasting companies were identified during this investigation other than Fax87, which Ms. Goksu identified herself. *Id.* Lastly, the investigation did not reveal the identification of any facsimiles transmitters, phone numbers of machines which transmitted, nor the identification of any receivers of purported facsimiles or other facsimiles (as defined in Plaintiffs' discovery requests). *Id.*

27. Conversely, the Defendants have not gone so far as to recreate (for former agents/employees) and search the e-mail addresses of all agents, employees and contractors since September 30, 2011 to determine whether any such individuals communicated with a "fax blast" company, nor have the Defendants gone so far as to contact by phone or e-mail all agents, employees and contractors since September 30, 2011 to determine whether any such individuals engaged in any "fax blasting" as the Plaintiffs' have requested (and sought to compel). *See* Exhibit A, ¶ 14. The actions—which form the crux of the Plaintiffs' Motion—place an extreme burden on the Defendants which is substantiated by the evidence referenced herein.

28. Indeed, the party opposing a motion to compel has the burden to show that the discovery is improper, unreasonable, or burdensome. *Wagner v. Viacost.com*, 2007 WL 1879914 at 1 (S.D. Fla. Jun. 29, 2007) (citing *Panola Land Buyers Ass'n v. Shuman*, 762 F. 2d 1550, 1559 (11th Cir. 1985). Claims of undue burden "should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome." *Sallah v. Worldwide Clearing LLC*, 855 F. Supp. 2d 1364, 1376 (S.D. Fla. 2012). To this end, "that party must also 'show that the burden or expense is unreasonable in light of the benefits to be secured from the discovery.'" *Border Collie Rescue, Inc. v. Ryan*, 2005 WL 662724 at 2 (M.D. Fla. Mar. 25, 2005) (quoting *Hammond v. Lowes Home Centers, Inc.*, 216 F.R.D 666, 672 (D. Kansas 2003). The Defendants have supplied the affidavits and evidence herein to meet these burdens.

29. First, UHA currently has 1,966 independent sales agents in 31 states. *See* Exhibit A, ¶ 13. Additionally, UHA has contracted approximately 9,128 independently contracted agents from September 2011 to the present, many of whom are no longer with UHA. *Id.* The identification of all independent sales agents since September 2011, inclusive of those that no longer work for the Defendants, and the process of identifying (to the extent identification is possible) current contact information and contacting of all current and former UHG and UHA employees, agents and contractor email addresses and, further, to contact them personally, would be incredibly time consuming, costly, and burdensome. *See* Exhibit A, ¶ 15.

30. Moreover, it would be incredibly burdensome and expensive to reconstruct and search email accounts of former agents of UHA to identify whether they had any email

contact with any faxing vendor. *See* Exhibit G, ¶¶ 1-16. In particular, based on the keyword search performed by UHA's computer network engineer on Ms. Goksu's former UHA e-mail account, it would take 2 hours and 35 minutes per account to recreate the e-mail accounts of all 9,128 UHA independently contracted agents since September 2011 (many of which are no longer with UHA), i.e., it would take approximately 23,580 hours to do so. *Id.*, ¶ 14. UHA has only two individuals employed that are qualified to conduct this kind of search. *Id.*, ¶ 15. Assuming a standard work year of 2,000 hours, it would require nearly twelve full-time, experienced information technology professionals an entire year to, if exclusively working on this task, to restore all such accounts. *Id.*, ¶ 15. Since the Companies' information technology department does not have the capability to perform this large-scale recreation of email accounts, the retention of a third party company may be necessary, which would be very costly and raises potential privacy concerns. *Id.*; *see also* Exhibit A, ¶ 15.

31. In addition to the burdensome nature of Plaintiffs' requests, there is no justification to place such a burden upon the Defendants. At the outset, the Defendants' investigation has affirmatively shown, based on their investigation and the evidence referenced herein, and Defendants have no reason to believe, any independent sales agent besides Ms. Goksu ever sent a "fax blast." *See* Exhibit A, ¶¶ 11, 14. As discussed *supra*, Ms. Goksu was a "lone wolf"; she acted on her own; she only used Fax87 to send facsimiles in the Orlando, Florida area (no other States); and she only used her personal e-mail GMAIL address which Plaintiffs are currently seeking to subpoena through Google. Moreover, all eight Regional Sales Leaders, encompassing all regions there are indepdent UHA sales agents, confirmed none ever authorized "fax blasts", and were not aware of any such "fax blasts" sent by any agent within their respective regions. *Id.* ¶ 16. Without belaboring the

point, Plaintiffs have no factual basis to justify the pursuit of a nationwide class and have an avenue to identify prospective class members which may have claims based upon any "fax blast" that Ms. Goksu may have taken part in by subpoenaing Google (which they are actively pursuing). Clearly, Defendants have shown the burden or expense they would incur is unreasonable in light of any benefit to Plaintiffs. *Border Collie Rescue,* 2005 WL 662724 at 2. Accordingly, Plaintiffs' Motion should be denied.

32. Plaintiffs' efforts to compel an unduly burdensome "investigation" by the Defendants in hopes of gathering evidence to certify a nationwide class is unwarranted as it is undisputed Ms. Goksu acted alone and solely in the Orlando, Florida area. Such baseless actions are no more than a "fishing expedition" that is unjustified by the evidence in this case and prohibited by the federal courts. *See, e.g., Shannon v. Albertelli Firm, P.C.*, 610 Fed. Appx. 866, 871 (11th Cir. 2015) (recognizing plaintiff did not present any evidence creating factual dispute and was properly denied discovery as such discovery requests were a fishing expedition whose burdens or expenses outweighed their benefit); *Salvato v. Miley*, 2013 WL 2712206 at 2 (M.D. Fla. Jun. 11, 2013) (denying plaintiff's motion to compel and holding that plaintiff's "hope" of finding relevant evidence was tantamount to plaintiff seeking permission to conduct a fishing expedition); *Jackson v. BellSouth Telecommunications, Inc.*, 2002 WL 34382751 at 6 (S.D. Fla. Jun. 4, 2002) (citing *Caplan v. California Pub. Employees' Retirement Sys.*, 1998 WL 575095 at 6 (N.D. Cal. Sept. 3, 1998) ("Plaintiff has relied on wholly conclusory allegations at the pleading stage while hoping to find data to support his claim through discovery; such fishing expeditions are not permissible under federal rules of discovery.").

33. In their Motion, Plaintiffs rely heavily on *Martin v. Global Marketing Research Services*, 2015 WL 6083537 (M.D. Fla. Oct. 15, 2015) as an exemplar case—where the plaintiffs were also seeking to certify a nationwide class—that justifies the burdensome demands the Plaintiffs herein seek be placed upon the Defendants herein. *Martin*, however, presents some critical distinctions to the instant case. First, the defendant at issue in *Martin* was a company that conducted political surveys by phone in various states on behalf of John Doe defendants based on information it gathered from states' boards of election. *Id.* at 1-2. There is no evidence, unlike *Martin*, of "campaigns" in other states and the Defendants have documented in their investigations and in responding to discovery—and Ms. Goksu confirmed this in her deposition. As Ms. Goksu has testified, she engaged in a limited and targeted facsimile campaign solely in the Orlando, Florida area where she manually searched for and input the recipients into a third party's database for that third party to actual send the facsimiles. *See* Exhibit F, pp. 38-39; 71-72; 79; 91.

34. Second, the *Martin* defendant previously admitted to contacting individuals via "autodialed" calls in at least two states, North Carolina and New Hampshire. *Id.* at 2. Conversely, in the instant matter, there is no dispute that Ms. Goksu acted alone and only in the Orlando, Florida, area.

35. Third, although the *Martin* defendant tried to restrict its response only to calls made in North Carolina and New Hampshire, it provided no articulable basis for doing so, and no evidence in support of its burdensome objections. Defendants have done precisely the opposite here in substantiating their burdensomeness objections. The affidavits and

evidence referenced herein articulate the unreasonableness of the undue burdens Plaintiffs seek to place on the Defendants.

## III. Conclusion

36. As set forth above, the Defendants have met their burden and why Plaintiffs' discovery request are burdensome. The Plaintiffs have no basis in fact, in light of the discovery conducted in this matter, to compel the Defendants to engage in an unduly burdensome investigation to assist the Plaintiffs in a "fishing expedition" they hope will whittle a nationwide class of claimants. The evidence generated in this matter leaves no dispute there is no such class and further highlights the fact the Plaintiffs had no basis in fact to allege such a class in the first place. The burden upon the Defendants to engage in such an "investigation" is severely outweighed by any benefit to the Plaintiffs. Therefore, the Defendants respectfully requests that this Honorable Court deny the Plaintiffs' Motion to Compel.

## Local Rule 3.01(g) Certificate of Conferral

Pursuant to Local Rule 3.01(g), undersigned counsel has conferred with Plaintiffs' counsel, Richard Bennett, by e-mail and telephone, and was advised the Plaintiffs do oppose the relief sought in this motion.

Respectfully submitted this 1st day of July, 2016.

/s/ *Michael F. Suarez*
PETER S. BAUMBERGER, ESQ.
Florida Bar No.: 117803
MICHAEL F. SUAREZ, ESQ.
Florida Bar No.: 88845
KUBICKI DRAPER, PA
25 West Flagler Street, Penthouse

Miami, Florida 33130
Main Line: (305) 374-1212
Direct Line: (305) 982-6774
Facsimile No.: (305) 374-7846
PSB@kubickidraper.com
PSB-KD@kubickidraper.com
mfs@kubickidraper.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify on July 1, 2016, I electronically filed the forgoing document with the Clerk of Court using CM/ECF system which will send a notice of electronic filing to all counsel of record that are registered with the court's CM//ECF.

Respectfully submitted,

/s/ Michael F. Suarez
PETER S. BAUMBERGER, ESQ.
Florida Bar No.: 117803
KUBICKI DRAPER, PA
25 West Flagler Street, Penthouse
Miami, Florida 33130
Main Line: (305) 374-1212
Direct Line: (305) 982-6774
Facsimile No.: (305) 374-7846
PSB@kubickidraper.com
PSB-KD@kubickidraper.com
mfs@kubickidraper.com
*Attorneys for Defendants*