# USHEALTH Advisors Agent Agreement

This USHEALTH Advisors Agent Agreement ("Agreement") is entered into by and between USHEALTH Advisors, L.L.C., a limited liability company organized under the laws of the state of Texas ("USHEALTH Advisors"), and Birsen Goksu ("Agent"), Agent #________, All terms that are capitalized and bold face herein shall have the meaning and definitions set forth in this Agreement.

## SECTIONS

1. **RELATIONSHIP – SCOPE OF AUTHORITY**

**USHEALTH Advisors** hereby appoints **Agent** to represent and promote the insurance coverage and other services, memberships and products offered for sale, enrollment or distribution by **USHEALTH Advisors**. The relationship of **Agent** to **USHEALTH Advisors** is that of an independent contractor, and nothing herein is intended or shall be construed to create the relationship of employee and employer. **Agent** is free to exercise his/her own judgment as to the time and manner for performing services required under this **Agreement**. **Agent** is also free to exercise his/her own judgment as to the persons from whom **Agent** will solicit applications and enrollments, as well as the time and place of the solicitation; provided, however, that in each instance such solicitation shall be is in accordance with applicable local, state, and federal laws. **Agent** is only authorized under this **Agreement** to do the following:

a. personally solicit applications and enrollment forms with respect to association memberships, discount benefit plans, health maintenance organization plans, and insurance products and coverage for **USHEALTH Advisors** and the insurance companies and other companies and associations with whom **USHEALTH Advisors** is contracted to sell the insurance policies, certificates of coverage under a group insurance plan, as well as benefits, privileges and discounts of such association membership enrollments, and the products and services of such other companies (such insurance companies, associations, and other companies hereinafter individually referred to as "**Carrier**" and collectively as "**Carriers**"),

b. personally assist interested individuals in timely and properly completing applications for all such applicable insurance plans, and coverage underwritten by a **Carrier**,

c. forward those applications to either **USHEALTH Advisors** or the applicable **Carrier** as directed for approval or rejection by such **Carrier**,

d. personally assist interested individuals in enrolling as members in applicable associations or other obtaining the products and services of other organizations, which in each instance is a **Carrier**,

e. forward those enrollment forms and/or other applicable documents for action by such **Carrier**, and

f. collect payment of only the initial applicable premium, enrollment fee, monthly dues or fees due on such applications or enrollment forms for the applicable **Carrier**.

However, **Agent** is not authorized to engage in the solicitation of such applications or enrollment forms, or the sale of any such insurance coverage, memberships and/or services or products offered by, through or in conjunction with **Carriers** in any territory, region or state until (i) **Agent** is appointed by each applicable insurance **Carrier** with the departments of insurance or other applicable regulatory agency in each applicable state, (ii) this **Agreement** is executed by the parties and is in effect, and (iii) **Agent** is properly trained by **USHEALTH Advisors**.

The appointment of **Agent** by any **Carrier** in any state, region or territory is not exclusive to **Agent**. **USHEALTH Advisors** and each **Carrier** retain the right to contract and/or appoint general agents, marketing directors, regional sales leaders, regional managers, division managers, district managers, training agents, agents, and other individuals and entities, direct or otherwise, in any territory, region or state assigned by **USHEALTH Advisors** to **Agent**, as well in any other state in which **Agent** is licensed. **USHEALTH Advisors** shall have the right at all times and in its sole discretion to terminate this **Agreement** with **Agent** for any reason.

**Agent** shall not have any authority from **USHEALTH Advisors** or any **Carrier** to make any representations or commitments of any type to any applicant (i) as to whether insurance coverage will be issued or the date of issuance of any insurance coverage sold, or (ii) that any insurance coverage sold will cover or provide benefit payments for either any pre-existing medical conditions not disclosed on the application or any medical or surgical procedures recommended for an applicant on or prior to the date of the application. In addition, **Agent** is not authorized to incur any liability on behalf of **USHEALTH Advisors** or any **Carrier**.

When making a face-to-face marketing presentation and personally taking a written application for insurance coverage each **Agent** shall, directly and in person, ask each applicant every question on each application, and either record the applicant's answers or assist the applicant in recording such answers, which in each case shall be truthful and complete without omitting



3748 revised 04/01/11
Webform 720

EXHIBIT
tabbies
B

EXHIBIT 4
Deponent Goksu
Date 2-16-16 Rptr. TS
WWW.DEPOBOOK.COM

any facts that were in any way stated or related by the applicant in response to any question. Moreover, when making a marketing presentation and taking an application via an electronic transaction format, **Agent** shall assist the applicant in completing the electronic application process, including recording of truthful and complete answers to each question on the application without omitting any facts, and **Agent** shall not do anything to, disrupt, interfere with or discourage an applicant from providing full, complete and truthful information in connection with such electronic transaction and electronic signature.

2. <u>COMPENSATION-FIRST YEAR COMMISSIONS, RENEWAL COMMISSIONS, DISCRETIONARY BONUSES</u>

A. <u>Commissions.</u> Subject to the terms and conditions of this Agreement, **USHEALTH Advisors** shall pay to **Agent** the commissions and fees specified in the **Commission Schedule** in force on the date that each insurance application is secured by **Agent** as the commission compensation in full for all services performed and all expenses incurred by **Agent**, both in connection with the solicitation and sale of such coverage by **Agent** and customer service provided by **Agent** to each applicant after such coverage is issued. The original **Commission Schedule** is attached hereto, marked Exhibit 1, and by this reference incorporated herein for all purposes. **USHEALTH Advisors** may, in its sole discretion, determine the amount of commissions to be offered under any **Commission Schedule. USHEALTH Advisors** may, in its sole discretion, determine the amount of commissions to be offered to **Agent** in connection with future products not listed on Exhibit 1.

**Commission Compensation** (defined below) reflected in any **Commission Schedule** may be modified for the products stated therein from time to time by **USHEALTH Advisors** upon a minimum of ten days (10) days advance written notice delivered to **Agent** in the form of either a personal written communication or a general field agent bulletin, unless an insurance statute, regulation or other insurance department requirement in any state requires **USHEALTH Advisors** to modify applicable **Commission Compensation** reflected in any such **Commission Schedule** sooner than a ten (10) day advance written notice to **Agent** would permit, in which event **USHEALTH Advisors** shall take reasonable steps to provide as much advance notice to **Agent** of the change as reasonably possible. Any future amendment to the original **Commission Schedule** is, likewise, incorporated herein for all purposes.

Unless otherwise specified in the applicable written notice of a change in a **Commission Schedule**, the **Commission Compensation** modification contained in the new **Commission Schedule** will apply to the applications dated on or after the effective date of the modified **Commission Schedule**. Unless subsequently modified in such a written notification, the **Commission Schedule** in effect on the date of any insurance application secured by **Agent** shall be applicable and remain in effect for calculating **Commission Compensation** earned in connection with the insurance coverage issued by **Carriers** in response to such application.

**Agent** shall earn and be paid only on insurance premiums paid in cash to **Carriers** on policies, certificates of coverage, benefit plans and other insurance coverage offered for sale through **USHEALTH Advisors** and personally sold by **Agent**, which have applications or enrollment forms bearing the **Agent's** name. Provided, however, **USHEALTH Advisors** shall be free to apply and credit any earned **Commission Compensation** of **Agent** hereunder to any debt of financial obligation of **Agent** to **USHEALTH Advisors** that pre-dates the effective date of this Agreement, if any, and otherwise pursue any and all other collection activities it deems reasonably appropriate regarding such pre-existing debt, if any.

Subject to the foregoing and other limitations set forth herein, the amount of first year commissions earned by and payable to **Agent** by **USHEALTH Advisors** for the sale by **Agent** of insurance plans and coverage underwritten or offered by **Carriers**, as well as renewal commissions earned by the renewal of such plans and coverage shall consist of the following components:

1) first year commission earned by **Agent** during each month of the first twelve (12) months of coverage under any **Carrier's** insurance policy, certificate of insurance coverage, or insured plan of coverage sold by **Agent** shall be calculated by multiplying the applicable first year commission percentage shown on the applicable **Commission Schedule** times the amount of the initial month's premium charged by such insurance **Carrier** for such coverage and paid by the policyholder or certificate holder (**"First Year Commissions"**);
2) renewal commission earned by **Agent** under any **Carrier's** insurance policy, certificate of coverage, or insured plan of coverage sold by **Agent** and thereafter renewed by the primary insured after the twelfth (12th) month of such coverage shall be calculated by multiplying the applicable renewal commission percentage shown on the applicable **Commission Schedule** times the applicable amount subsequent renewal premium payment paid by the primary insured to the **Carrier** for the thirteenth (13th) month of coverage and thereafter (**"Renewal Commissions"**);
3) generally, the controlling **Commission Schedule** for purposes of calculating both **First Year Commissions** and **Renewal Commissions** will be the **Commission Schedule** that was in force on the date of the applicable application for the insurance coverage that was completed in connection with the sale of such coverage by **Agent**, unless subsequently modified, as stated above;
4) all **First Year Commissions** and **Renewal Commissions** are based only on the amount of the original premium charged by the insurance **Carrier** on the effective date the insurance coverage was issued such that the difference between the amount of any future premium rate increase charged by the insurance **Carrier** for any reason and the amount of the

original premium charged by it on the original effective date of coverage is not commissionable, and no percentage or part thereof shall be earned or otherwise payable to Agent; and

5) No First Year Commissions or Renewal Commissions shall be earned or paid to Agent unless and until USHEALTH Advisors first receives payment of such specified First Year Commissions and Renewal Commissions, together with USHEALTH Advisors' override commissions, if any, from the Carriers.

Such First Year Commissions and Renewal Commissions are referred to herein collectively as "Commission Compensation". Commission Compensation shall be payment in full for all services performed and expenses incurred by Agent relative to the underwritten insurance coverage of the insurance Carriers sold by Agents. Such Commission Compensation earned by Agent shall be vested in accordance with the terms of Section 15.

B. Other Fees. The amounts of any other fees and compensation, if any, earned by and payable to Agent in connection with the insurance coverage sold by Agent under this Agreement ("Other Fees") are, likewise, generally based upon the date of the original sale, and shall be set forth on a Commission Schedule. Unless subsequently modified, the controlling Commission Schedule for purposes of calculating any such Other Fees shall be the Commission Schedule that was in force on the date of the applicable application was completed by the applicant, and are subject to the following conditions:
Any Commission Schedule with respect to Other Fees may be, likewise, modified from time to time by USHEALTH Advisors in its sole discretion, upon a minimum of ten (10) days advance written notice delivered to Agent in the form of either a personal written communication or a general field agent bulletin, unless an insurance statute, regulation or other insurance department requirement in any state requires USHEALTH Advisors to modify applicable Other Fees reflected in any such Commission Schedule sooner than a ten (10) day advance written notice to Agent would permit, in which event USHEALTH Advisors shall take reasonable steps to provide as much advance notice to Agent of the change as reasonably possible. Unless otherwise specified in the applicable written notice of a change in a Commission Schedule, the Other Fees modification contained in the new Commission Schedule will apply to the applications dated on or after the effective date of the modified Commission Schedule. Unless subsequently modified in such a written notification, the Commission Schedule in effect on the date of any insurance application secured by Agent shall be applicable and remain in effect for calculating Other Fees earned in connection with the insurance coverage issued by Carriers in response to such application.

1) Generally, the Commission Schedule in effect on the date of any application secured by Agent shall be applicable and remain in effect for calculating Other Fees, if any, earned by Agent unless subsequently modified, as stated above.
2) Other Fees earned by and payable to Agent shall be vested in accordance with the terms of Section 15; but no Other Fees shall be earned or paid to Agent unless and until USHEALTH Advisors first receives payment of such specified Other Fees, together with USHEALTH Advisors' override thereon, if any, from the Carriers.

C. Incentive Bonuses and Other Discretionary Incentive Programs. USHEALTH Advisors shall be free, in its sole discretion, to at any time create and maintain, as well as thereafter cancel and terminate upon a minimum of ten (10) days advance written notice delivered to Agent in the form of either a personal written communication or a general field agent bulletin, a discretionary fee or cash incentive payment under a bonus program ("Incentive Bonuses"). Provided, however, prior to the termination of this Agreement the cancellation of any such Incentive Bonus program by USHEALTH Advisors shall not affect Agent's right to the receipt of any Incentive Bonus earned by and payable to Agent pursuant to the terms and conditions of such bonus program prior to the effective date of the cancellation of such program. Upon receipt by Agent of notice from USHEALTH Advisors of the establishment of a discretionary additional fee, incentive or bonus program not reflected on the Commission Schedule and Agent's entitlement to participate thereunder, Agent shall be entitled to participate in such discretionary program and receive payment of any applicable fee or bonus earned thereunder only during the term of such discretionary program and prior to the termination of this Agreement.

D. Payment to Agent. Subject to the provisions and limitations contained in Section 6 (COMMISSION COMPENSATION AND OTHER FEES LIMITATIONS), Section 7 (ADVANCES), Section 10 (AGENT PROMISSORY NOTE), Section 11 (PLEDGE AND COLLATERAL), Section 13 (EVENTS OF DEFAULT), Section 14 (REMEDIES OF SECURED PARTY UPON DEFAULT), and Section 15 (VESTING SCHEDULE) USHEALTH Advisors shall pay by check payable to Agent, or alternatively at his/her election by electronic funds transfer directly into a banking account designated by Agent, the applicable amount of Commission Compensation, Other Fees and Incentive Bonuses. During the term of this Agreement and thereafter, as applicable, USHEALTH Advisors will furnish Agent with a monthly statement of Agent's earned and advanced Commission Compensation, as well as earned and advanced Other Fees, if any. Upon receipt of any such statement or payment, Agent shall immediately examine the content of the statement and the amount of any payment, together with any accompanying documents. If Agent is not completely satisfied as to the accuracy of each item, then Agent shall, within thirty (30) days of the date of the receipt of such statement, payment and/or accompanying documents, provide USHEALTH Advisors with a written statement containing the full particulars of any discrepancy. If Agent does not provide such a written statement of discrepancies within thirty (30) days of such items, then the statement, payment, calculation of such payment, and any accompanying documents shall be deemed accepted by Agent as true, correct and accurate for all purposes during the period covered by the statement and payment, and Agent waives the right to contest the

content of such statement or the amount of such payment in the future. **USHEALTH Advisors** will also provide periodic updates on **Agent's** on target **Incentive Bonuses**, if any.

3. **GEOGRAPHIC TERRITORY AND EXCLUSIVE INSURANCE PRODUCT SALES**

A. Territory. During the term of this **Agreement**, **Agent** may solicit only when product and rates have been authorized and released in advance by **USHEALTH Advisors** in writing, but only if **Agent** is properly licensed in such state(s), and only if no specific counties are excluded in writing by **USHEALTH Advisors**. It is understood and agreed that no territory, county, state or region is assigned exclusively to **Agent** by **USHEALTH Advisors** unless expressly done so in writing by **USHEALTH Advisors**. It is further understood and agreed that regardless of any such express exclusivity provided to **Agent** by **USHEALTH Advisors**, **Carriers** shall be, in each instance, nevertheless free to contract with any and all other agents, independent marketing organizations, master general agents, general agents, regional sales leaders, regional managers, district managers, career agents, career agencies, brokers, as well as any other agencies and marketers in any state at any time and for any reason without any liability or obligation to either **Agent**.

B. Agent to Exclusively Represent USHEALTH Advisors and Carriers. In consideration of the mutual promises and covenants contained in this **Agreement**, **Agent** represents and warrants to **USHEALTH Advisors** that **Agent** will only represent **USHEALTH Advisors** and **Carriers** during the term of the **Agreement**, such that **Agent** will exclusively solicit applications for the insurance coverage offered and to be offered by **Carriers**. In this regard **Agent** will not sell, solicit, attempt to sell, or attempt to solicit any insurance policies, certificates of coverage, products, benefits, association memberships, privileges or services during the term of this **Agreement** for any individual or entity other than **Carriers**.

C. Discontinuance of Products by Carriers. Each **Carrier** and/or **USHEALTH Advisors** may, in its sole discretion, discontinue conducting all or any part of its business or products in all or any part of **Agent's** territory, county, state or region without liability to **Agent**, even if (i) still licensed and authorized therein, and (ii) conducting business through other marketing channels therein.

4. **RESPONSIBILITIES**

**Agent** shall at all times comply with all of **USHEALTH Advisors'** rules and regulations as such may be amended from time to time and with all laws and regulations of the states in which **Agent** solicits business. **Agent** shall not rebate any premiums to any party or applicant. **Agent** shall be responsible for acquiring and maintaining all licenses in any territory in which **Agent** solicits insurance applications, as required by applicable law. **Agent** shall pay for all of license fees, appointment fees, bond fees, and fees and taxes of **Agent** that are required by any federal, state or local government. **Agent** is solely responsible for the performance, fidelity and honesty of **Agent's** employees, if any, during the term of their employment relationship with **Agent**. All funds collected by **Agent**, conditionally or otherwise, from applicants or enrollees for the insurance plans, coverage, or other benefits offered by **Carriers** are to be held by **Agent** in trust and are the property of the applicable **Carrier**, and **Agent** shall act as a fiduciary with respect to those funds, which will in no event be used by **Agent** for personal, business or other purposes. **Agent** agrees to work diligently to prevent lapsing and replacement of insurance policies effected and sold hereunder. All insurance coverage, association memberships and all other products, policies, benefits and services sold by **Agent** hereunder are and shall remain the property of each applicable **Carrier**. Moreover, the customers, consumers and/or clients to whom such coverage, policies, products, benefits and services were sold are and shall remain the confidential customers, consumers and clients of **USHEALTH Advisors** and **Carriers**.

**Agent** shall at all times (i) comply with all rules and regulations promulgated by **USHEALTH Advisors** and/or **Carriers**, which may be amended from time to time, that do not conflict with the terms of this **Agreement**, (ii) truthfully and accurately describe the insurance products offered and to be offered by **Carriers**, (iii) comply with all laws and regulations of the states in which **Agent** solicits business, and (iv) not engage in any false, misleading, or deceptive act or practice in connection with **USHEALTH Advisors** or any applicant or insured of **Carriers**.

5. **TERM**

This **Agreement** shall be for an initial term of one (1) year from the date of execution set forth below and shall automatically renew for an additional one (1) year period on each anniversary date of its commencement unless it is terminated as set forth below. Either party upon five (5) days written notice to the other may terminate this **Agreement** at any time for any or no reason. In addition, **USHEALTH Advisors** may terminate this **Agreement** "for cause" immediately upon mailing written notice to **Agent's** last known address if **Agent** or any of **Agent's** employees shall:

a. commit any fraud or material misrepresentation (i) upon **USHEALTH Advisors**, any **Carrier**, or any applicant in connection with applications solicited by **Agent** on behalf of any **Carrier**, or (ii) upon **USHEALTH Advisors** or any **Carrier** in connection with **Agent's** other duties under this **Agreement**;

b. violate or breach (i) the payment terms of the **Obligations** pursuant to **Section 10** of this **Agreement**, which violation or breach is not cured by **Agent** within three (3) business days after being put on notice of such payment default and/or (ii) the laws or regulations governing insurance sales in connection with insurance sales in any state or states in which **Agent** is licensed, which has not been completely cured by **Agent** within thirty (30) days of written or e-mail communication from **USHEALTH Advisors** and/or any **Carrier**;

c. be convicted of any felony or any misdemeanor involving or affecting the business of insurance generally or in the judgment of **USHEALTH Advisors** adversely affect **Agent's** future insurance marketing;

d. publish, distribute or use any circulars, advertising, sales material or other matter referring to **USHEALTH Advisors** or to policies, coverage, products, benefits or services of **Carriers**, including the name of any applicable insurance company without first securing the written approval of **USHEALTH Advisors** and each applicable **Carrier**;

e. violate or breach the exclusivity provisions of **Section 3b** of this **Agreement**;

f. initiate contact or attempt to communicate with any customer, policyholder, or client of **USHEALTH Advisors** or any **Carrier** for the purpose of suggesting or inducing such person to lapse, cancel or otherwise terminate the policy, coverage, product, benefit or service sold hereunder and pursuant to which sale **Agent** was paid a commission hereunder by **USHEALTH Advisors**, and replace it with policies, coverage, products benefits or services of any other company;

g. contact, solicit, recruit or attempt to recruit any agent of **USHEALTH Advisors** away from **USHEALTH Advisors** and to another agency or insurance company;

h. failure to maintain the confidentiality of **Trade Secret Information**;

i. breach any warranty or representation of **Agent** under this **Agreement**, including, but not limited to **Section 9**, BEST EFFORTS TO SELL PRODUCTS OF CARRIERS ; or

j. target and thereafter directly communicating with any **Carrier's** insured for the purpose of replacing such coverage with coverage of any other insurance company.

If this **Agreement** is terminated "for cause" by **USHEALTH Advisors**, then all of **Agent's** vested or non-vested rights to the future receipt of any **Commission Compensation**, **Other Fees** and **Incentive Bonuses** shall immediately and irrevocably terminate and be forfeited by **Agent**.

## 6. COMMISSION COMPENSATION AND OTHER FEES LIMITATIONS

No **Commission Compensation** or **Other Fees** are earned, due or payable to **Agent** on any (i) monthly policy fee, (ii) monthly certificate of coverage fee, or (iii) monthly service fee not specifically listed as the premium for such coverage, and no **Commission Compensation** shall be deemed earned until the applicable policy or certificate of coverage is issued by the applicable **Carrier**, delivered by **Agent** or the applicable **Carrier**, and accepted by the applicant with the initial premium paid.

**Commission Compensation** and **Other Fees** shall be paid, without interest thereon, within forty five (45) days after their receipt by **USHEALTH Advisors** of all applicable commissions (including any **USHEALTH Advisors** override commissions) from each applicable **Carrier**. All **Commission Compensation** and **Other Fees** earned by **Agent** shall be based only upon the amount of the original insurance premium required for such coverage on the date of the application, unless (i) the insured at any time after the issue date of such coverage elects to reduce the benefits originally afforded under such plan or eliminate the number of insureds covered under such plan, (in which event **Commission Compensation** and **Other Fees** earned after the effective date of such change(s) will be based upon the reduced amount of premium required for such reduced coverage, net of any renewal rate increases implemented after the issue date of the plan of coverage due to change in the original table rate of premiums, trend, medical inflation or any other economic or non-economic factors), or (ii) the insured within the first twelve (12) months after the issue date of such coverage elects to increase benefits originally afforded under such plan or add insureds covered under such plan, (in which event **Commission Compensation** and **Other Fees** earned after the effective date of such change(s) will be based upon the increased amount of premium required for such enhanced coverage, net of any renewal rate increases implemented after the issue date of the plan of coverage due to change in the original table rate of premiums, trend, medical inflation or any other economic or non-economic factors).

Provided, however, no **Commission Compensation** and **Other Fees** will be earned by or due and payable to **Agent** on the amount of any (i) increase in the insurance premium charged by the applicable **Carrier** after the issue date of such coverage as a result of a change in the table rate of premiums, (ii) increase in the insurance premium charged by a **Carrier** for trend, the attained age of insured, medical inflation or any other economic or non-economic factors over the original premium charged in order for the insured right to renew such coverage, (iii) policy fee or policy administration fee charged by a **Carrier**, (iv) certificate of coverage fee or certificate of coverage administration fee charged by a **Carrier**, or (v) service fee not listed as the premium for such coverage.

Upon the termination of this **Agreement**, **Agent** is neither required nor authorized to provide ongoing customer service to any insured to whom **Agent** previously sold coverage hereunder. Therefore, any **Commission Compensation** and **Other Fees** earned by **Agent** pursuant to Section 2 and payable to **Agent** after termination pursuant to Section 15 shall be subject to

an annual five percent (5%) customer service and Account administration fee applied by and paid to USHEALTH Advisors for ongoing customer service to be provided by USHEALTH Advisors to such insureds and Account administration.

7. **ADVANCES**

USHEALTH Advisors may, at its discretion, offer Agent the advance payment of a certain portion of the anticipated earned **First Year Commissions** under the terms and conditions set forth in this Agreement, as well as loan Agent other sums (each an "Advance"). All such offered Advances that are accepted by Agent and paid by USHEALTH Advisors shall be reflected as a debt of Agent in Agent's Account or Accounts (collectively "Account") on the books of USHEALTH Advisors. The provisions of this Agreement, including Section 10, shall govern repayment of Advances by Agent and such repayments shall be secured by Section 11. USHEALTH Advisors may modify the terms of USHEALTH Advisors' advance schedule at any time without the consent of Agent although USHEALTH Advisors shall endeavor to notify Agent promptly of any changes in the advance schedule. The current advance schedule is set forth in the original Commission Schedule, Exhibit 1.

It is understood that USHEALTH Advisors shall never be obligated to make any such Advance. Moreover, any such discretionary Advance by USHEALTH Advisors shall be subject to the following:

A. Agent's Account. Each Advance or other loaned amounts provided to Agent by USHEALTH Advisors will be debited to the Agent's Account, herein pledged to USHEALTH Advisors to secure repayment of the Advances.

B. Repayment. All Advances will be deemed to be evidenced by the Account and the Agent Promissory Note set forth in Section 10.

C. Account Credits. Applicable Commission Compensation and Other Fees earned by Agent after an Advance payment by USHEALTH Advisors under the Agreement will be credited to Agent's Account in order to reduce the debit balance of such Account. Earned Commission Compensation, Other Fees and Incentive Bonuses may be held by USHEALTH Advisors in order to offset all or any part of the debit balance of Agent's Account. Therefore, USHEALTH Advisors, in its sole discretion, may withhold payment of Commission Compensation and/or Other Fees earned by Agent until all amounts owed to USHEALTH Advisors by Agent are fully repaid, including all Advances to USHEALTH Advisors.

D. Advance Requirements. USHEALTH Advisors has the sole discretion whether to make an Advance to Agent. Reasons USHEALTH Advisors may exercise its discretion to not make an Advance to Agent include, but are not limited to, the following: (i) if the check accompanying the application is non-negotiable or does not clear, the bank draft information provided on the application is not accurate or the initial premium draft is not honored or if the credit card information provided on the application is not accurate or the initial premium charge is declined; (ii) if the coverage applied for is rejected or declined by the applicable Carrier; (iii) economic factors, (iv) if the coverage applied for is changed by the applicant or the effective date postponed beyond the time limit approved by the applicable Carrier; (v) if USHEALTH Advisors, in its discretion, determines to discontinue Advances for any reason; or (vi) if USHEALTH Advisors, in its discretion, determines Agent's Account does not warrant the risk of making such Advance.

E. Refunds. Agent shall promptly refund to USHEALTH Advisors all Advances received with respect to (i) submitted applications for which policies are not issued, (ii) issued coverage, which is not accepted by the applicant, (iii) premiums which are refunded by the applicable Carrier for any other reason, and (iv) policies which are rescinded because of a fraudulent application. All such refunds, when received by USHEALTH Advisors, will be credited to Agent's Account.

F. Chargebacks. USHEALTH Advisors has the right to immediately "chargeback" and collect from Agent the amount of that portion of the Agent's Account that represents unearned First Year Commissions and Other Fees previously Advanced to Agent that will not be earned in the future because the policy or certificate of coverage that was responsible for such Advance has lapsed or terminated, by (i) first, deducting the amount of such "chargeback" from any Advance reserve account established by USHEALTH Advisors (ii) second, if collection of the "chargeback" is not possible by (i), then deducting the amount of such "chargeback" from the amount of cash to be received by Agent from the next scheduled future Advance, (iii) third, if collection of the "chargeback" is not possible by (ii), then requiring immediate payment by Agent of the amount of such "chargeback," and (iv) fourth, if collection of the "chargeback" has not occurred under (i), (ii) and/or (iii), then debiting the amount of such "chargeback" against earned Commission Compensation and Other Fees that are earned. In addition, if the policy or certificate of coverage lapses or terminates prior to the expiration of the three (3) months from the coverage effective date, then USHEALTH Advisors has the right to immediately "chargeback" and collect from Agent the entire amount of First Year Commissions (earned and unearned) previously Advanced to Agent in connection with the sale of such coverage, in the same manner provided in (i), (ii), (iii) and (iv) immediately above.

8. **LEADS**

USHEALTH Advisors may, in its sole discretion, create a new sale lead program. USHEALTH Advisors will attempt to supply Agent with new sale leads through any such program that might be established. However, Agent shall only use any such leads provided for solicitation of applications on behalf of USHEALTH Advisors and Carriers. In this regard, Agent shall maintain records of leads provided in order to account to USHEALTH Advisors as requested for all leads furnished.

9. **BEST EFFORTS TO SELL PRODUCTS OF CARRIERS**

In consideration of USHEALTH Advisors' agreements and covenants contain herein, (including, but not limited to, USHEALTH Advisors agreement to provide Agent with leads for new business sales and the issuance of Advances to Agent upon the issuance of coverage by Carrier), Agent covenants and agrees that Agent will use his/her to best efforts sell the products, services, benefits, plans and coverages offered by Carriers in Agent's territory. In connection therewith, Agent represents and warrants to USHEALTH Advisors that with respect to insurance coverages offered by Carriers, Agent will use his/her best efforts to submit a properly completed application for insurance coverage to the applicable Carrier for each individual that meets the field underwriting guidelines of such Carrier. If Agent fails to perform in accordance with this Section or otherwise breaches it, this Agreement can be terminated "for cause" by USHEALTH Advisors and Agent will forfeit vested Commission Compensation pursuant to Section 15.

10. **AGENT PROMISSORY NOTE**

FOR VALUE RECEIVED, the undersigned Agent, as maker, promises to pay to and to the order of USHEALTH Advisors the aggregate of all sums from time to time Advanced by USHEALTH Advisors to Agent or for the benefit of Agent as reflected in all of Agent's Accounts on the books of USHEALTH Advisors or otherwise owed by Agent to USHEALTH Advisors, with interest on the principal balance from time to time remaining unpaid until this note shall have been paid in full at the rate hereinafter provided. Agent agrees and acknowledges that all Advances and other amounts advanced or deemed advanced to Agent by USHEALTH Advisors pursuant to the Agreement or otherwise, whether for fees, "chargebacks", dues, interest, First Year Commission Advances or any other charges to the Account, together with all other payment obligations of Agent under this Agreement, as well as the performance by Agent of all non-payment obligations owed to USHEALTH Advisors or its assigns, including but not limited to those set forth in the Agreement (collectively the "Obligations"), shall be deemed to be principal amount payable pursuant to this note.

A. **Interest Rate**. The unpaid principal balance from time to time outstanding shall, prior to maturity, bear interest at a per annum rate that may be adjusted on an annual basis by USHEALTH Advisors on January 1 of each calendar year. The current annual interest rate is equal to 0.75% per month (9% per year).

B. **Payment**. The unpaid amounts of both principal and interest outstanding under this note shall be due and payable on demand, but if no demand has theretofore been made then demand shall be deemed to have been given immediately upon the termination of this Agreement.

C. **Prepayment**. The principal or interest of this note may be prepaid from time to time and at any time, in whole or in part, without premium or penalty. All prepayments shall be applied first to accrued but unpaid interest and then to principal.

D. **Default Interest**. After the maturity hereof (whether by demand, acceleration or otherwise), all past due principal, and if permitted by applicable law all past due interest, shall bear interest at the lesser of eighteen percent (18%) per annum or the highest rate permitted by applicable law.

E. **Default**. Without in any way limiting the demand provisions hereof, the occurrence of any of the following events shall be considered a default hereunder:

1) the failure of Agent to make timely payment of any principal or interest due hereunder;
2) the termination of this Agreement by USHEALTH Advisors for cause;
3) the bankruptcy or insolvency of, the assignment for the benefit of creditors by, or the appointment of a receiver for any of the property of Agent;
4) a failure of Agent to timely and properly perform any covenant or provision of this Agreement.

At the option of the holder of this note, upon the occurrence of any default, the entire outstanding principal balance and all accrued unpaid interest shall at once become due and payable, without presentment, demand, protest, notice or grace, and the holder may, in addition to all its other rights and remedies, report Agent's name and Account information to credit reporting agencies.

The failure to exercise the foregoing options upon the happening of one or more of the foregoing defaults shall not constitute a waiver of the right to exercise any of said options at any subsequent time in respect of the same default or any other default. The acceptance by the holder of this note of any payment hereunder which is less than the payment in full of all amounts due

and payable at the time of such payment shall not constitute a waiver of the right to exercise any of said options at that time or at any subsequent time or nullify any prior exercise of any such option.

F. Attorneys' Fees. If this note is not paid at maturity (whether by demand, acceleration or otherwise), or if it is collected through a bankruptcy, probate, or other court, whether before or after any such maturity, Agent shall pay all costs of collection incurred by the holder hereof, including but not limited to reasonable attorneys' fees.

G. Waiver of Notice and Consent. Agent waives presentment, notice of dishonor, notice of intention to accelerate the maturity hereof, diligence in collecting, grace, notice and protest, and Agent consents to all extensions which from time to time may be granted by the holder hereof and to all partial payments hereof, whether before or after maturity (whether by demand, acceleration or otherwise).

H. Legal Interest Limitations. All agreements between Agent and the holder hereof, whether now existing or hereafter arising and whether written or oral, are hereby expressly limited so that in no contingency or event whatsoever, whether by reason of acceleration of the maturity hereof, or otherwise, shall the amount paid, or agreed to be paid to the holder hereof for the use, forbearance, or detention of the money advanced or to be advanced by USHEALTH Advisors to Agent and evidenced hereby or otherwise or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing, or pertaining to the indebtedness evidenced hereby, exceed the maximum amount permissible under applicable law. If from any circumstance whatsoever, fulfillment of any provision hereof or of such other documents, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law, then ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any such circumstance the holder hereof shall ever receive as interest or otherwise an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the reduction of the principal indebtedness of Agent to the holder hereof, and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of principal hereof, such excess shall be refunded to Agent. All sums paid or agreed to be paid by Agent for the use, forbearance or detention of the indebtedness of Agent to the holder hereof, as evidenced hereby or otherwise, shall to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full term of such indebtedness until payment in full in such manner that there will be no violation of applicable laws pertaining to the maximum rate or amount of interest which may be contracted for, charged or received with respect to such indebtedness. The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between the undersigned and the holder hereof.

I. Assignment. USHEALTH Advisors or any subsequent holder of this note may assign its rights as holder without notice to Agent and without Agent's consent.

## 11. PLEDGE AND COLLATERAL

For value received, Agent hereby assigns and transfers to USHEALTH Advisors and grants USHEALTH Advisors a security interest in any and all First Year Commissions, Renewal Commissions, Other Fees, Incentive Bonuses, as well as Agent's benefits under any deferred compensation plan created by USHEALTH Advisors, or its parent, subsidiaries or affiliates, in which Agent becomes a participant, and any other amounts payable by USHEALTH Advisors to Agent at any time and from time to time as reflected in the Agent's Account, whether earned or unearned (the "Collateral"). The Collateral is pledged to USHEALTH Advisors and held by it to secure the repayment of any and all Advances and Obligations.

This pledge of Collateral by Agent to USHEALTH Advisors will remain in effect until released by USHEALTH Advisors in writing. USHEALTH Advisors has no obligation to release the Collateral except upon payment in full of the Obligations. While this pledge of Collateral is in effect, neither Agent nor any other party except USHEALTH Advisors and its assigns and designees can withdraw all or any part of the Collateral. Agent agrees that no joint owner, beneficiary, surviving spouse or representative of Agent's estate shall have any rights in the Collateral in the event of Agent's death or incapacity unless and until the Obligations are paid in full and then only to the extent the Collateral has vested in and is payable to Agent pursuant to the Agreement.

Agent hereby assigns and grants to USHEALTH Advisors the right to setoff and apply all or any part of the Collateral toward the repayment of the Obligations, whether or not Agent is in default of all or any part of the Obligations. If Agent is in default of all or any part of the Advances and Obligations, USHEALTH Advisors may exercise such right of setoff without any notice to Agent or consent from Agent (unless such notice or consent is required by law and cannot be waived). Provided, however, if in USHEALTH Advisors' sole discretion, the amount of the Collateral is insufficient at any point in time after such default by Agent to repay the amount of the Obligations then owed by Agent, then USHEALTH Advisors shall be free to pursue all other remedies available to it by law or equity in order to collect the unpaid amount of the Obligations from Agent while USHEALTH Advisors continues to receive Collateral that will be setoff and credited against such the amount of Obligations.

12. **ADDITIONAL WARRANTIES AND REPRESENTATIONS REGARDING THE COLLATERAL**

Agent warrants and represents to USHEALTH Advisors that: (a) except for the security interest created by this Agreement, Agent has title to the Collateral free from any lien, security interest, encumbrance or claim, and Agent will, during the term of this Agreement at Agent's cost, keep the Collateral free from other liens, security interests, encumbrances or claims, and defend any action which may affect the security interest created herein or Agent's title to the Collateral; (b) no financing statement covering the Collateral or any part or proceeds thereof is on file in any public office and, at USHEALTH Advisors' request, Agent will join in executing all financing statements and other instruments deemed necessary by USHEALTH Advisors to perfect the security interest created herein; and (c) no part of the Collateral is exempt or protected by law from the effects of this Agreement.

13. **EVENTS OF DEFAULT**

The happening of any of the following events or conditions shall be a breach of this Agreement and a default hereunder by Agent: (i) a default in the timely payment or performance of the Obligations; (ii) breach of any warranty or representation made by Agent herein; or (iii) Agent's failure to timely perform any covenant or other obligations under the Agreement or any other agreement between Agent and USHEALTH Advisors.

14. **REMEDIES OF SECURED PARTY UPON DEFAULT**

When default or an event of default occurs, and at any time thereafter, USHEALTH Advisors may proceed to enforce payment of the Obligations and may immediately offset any and all remaining Collateral against the Obligations and may exercise any other remedies available under applicable law.

15. **VESTING SCHEDULE**

A. Commission Compensation and Other Fees Vesting Schedule.

Subject to the limitations of Sections 2 and 6, as well as the elimination and forfeiture provisions of Section 15B below and the limitation provisions of Section 15C below, after the termination of this Agreement either by Agent for any reason or by USHEALTH Advisors without "cause", all Commission Compensation and Other Fees earned by Agent pursuant to Section 2 hereof shall be payable to Agent during the period of time provided in the following vesting schedule:

1) if such termination of this Agreement occurs before it has been in continuous force and effect for at least twelve (12) months, then no Commission Compensation and/or Other Fees shall be vested in, due, or payable to Agent after the date of such termination;
2) if such termination of this Agreement occurs after it has been in continuous force and effect for at least twelve (12) months, but less than twenty four (24) months, then all Commission Compensation and Other Fees earned by Agent hereunder for each applicable policy or certificate of coverage issued by each Carrier shall be vested and paid monthly, as earned, after the date of such termination for the period of time which is the lesser of either the period set forth in the applicable Commission Schedule for each applicable policy or certificate of coverage, or the period of twelve (12) months from the date of such termination, after which applicable period the payment of all Commission Compensation and Other Fees shall terminate with respect to each policy or certificate of coverage;
3) if such termination of this Agreement occurs after it has been in continuous force and effect for at least twenty four (24) months, but less than thirty six (36) months, then all Commission Compensation and Other Fees earned by Agent hereunder for each applicable policy or certificate of coverage issued by each Carrier shall be vested and paid monthly, as earned, after the date of such termination for the period of time which is the lesser of either the period set forth in the applicable Commission Schedule for each applicable policy or certificate of coverage, or the period of twenty four (24) months from the date of such termination, after which applicable period the payment of all Commission Compensation and Other Fees shall terminate with respect to each policy or certificate of coverage;
4) if such termination of this Agreement occurs after it has been in continuous force and effect for at least thirty six (36) months, but less than forty eight (48) months, then all Commission Compensation and Other Fees earned by Agent hereunder for each applicable policy or certificate of coverage issued by each Carrier shall be vested and paid monthly, as earned, after the date of such termination for the period of time which is the lesser of either the period set forth in the applicable Commission Schedule for each applicable policy or certificate of coverage, or the period of thirty six (36) months from the date of such termination, after which applicable period the payment of all Commission Compensation and Other Fees shall terminate with respect to each policy or certificate of coverage;
5) if such termination of this Agreement occurs after it has been in continuous force and effect for at least forty eight (48) months, but less than sixty (60) months, then all Commission Compensation and Other Fees earned by Agent hereunder for each applicable policy or certificate of coverage issued by each Carrier shall be vested and paid monthly, as earned, after the date of such termination for the period of time which is the lesser of either the period set forth in the applicable Commission Schedule for each applicable policy or certificate of coverage, or the period of forty eight (48)

months from the date of such termination, after which applicable period the payment of all **Commission Compensation** and **Other Fees** shall terminate with respect to each policy or certificate of coverage; and

6) if such termination of this **Agreement** occurs after it has been in continuous force and effect for at least sixty (60) months, then all **Commission Compensation** and **Other Fees** shall be vested and paid monthly, as earned, to **Agent** after the date of such termination for the period of time set forth in the applicable **Commission Schedule** with respect to each policy or certificate of coverage.

Provided, however, for purposes of satisfying each level of the vesting schedule above, **Agent** shall be given credit for each calendar month prior to the effective date of this **Agreement** that **Agent** was continuously contracted with either (i) Security Health Advisors, L.L.C. under an agent contract entitled, Security Health Advisors Agent Agreement, or (ii) USHEALTH Career Agency, Inc. under an agent contract entitled, USHEALTH Career Agent Agreement.

B. <u>Vested Commission Compensation and Other Fees Elimination and Forfeiture.</u>

Notwithstanding the Vesting Schedule contained in **Section 15A** above or any other matter to the contrary contained herein, **Agent's** right to payment of **Commission Compensation** and/or **Other Fees**, if any, shall immediately and irrevocably terminate such that no further **Commission Compensation** and/or **Other Fees** shall be thereafter earned, due or payable to **Agent** under any one or more of the following conditions and/or circumstances:

1) this **Agreement** is terminated, by **USHEALTH Advisors** "for cause" as defined in **Section 5**;
2) this **Agreement** is terminated by **Agent** for any reason or by **USHEALTH Advisors** without "cause", and thereafter **Agent** or **Agent's** employees (1) engage in or commit any of the prohibited acts in **Section** 5, 22, or 23 of this **Agreement**, or (2) fail to perform or breaches any other post–termination, obligations required in **Sections** 1, 4, 8, 22, 23, 24, or 28 of the **Agreement**; or
3) in any twelve (12) month period **Commission Compensation** and **Other Fees** are less than $1,200; and/or
4) if the number of policies or certificates of coverage procured by **Agent** and issued by insurance **Carriers** that remain inforce is less than twenty five (25).

C. <u>Suspension of Payment of Vested Commission Compensation and Other Fees.</u>

Notwithstanding the Vesting Schedule in **Section 15A**, at any time after either a for any reason termination by **Agent** or a without "cause" termination by **USHEALTH Advisors**, **Agent's** right to payment of **Commission Compensation** and/or **Other Fees**, if any, shall be suspended if:

1) **Agent** is in breach or violation of **Sections** 7, 10, 11, and 12 on the date any such post termination payment would otherwise be due, in which event the amount of any such suspended **Commission Compensation** and **Other Fees** payment to **Agent** shall be applied by **USHEALTH Advisors** toward payment of the **Obligations**;
2) **Agent** is in breach or violation of **Sections** 18, or 19 in which event the amount of any such suspended **Commission Compensation** and **Other Fees** payment to **Agent** shall be held by **USHEALTH Advisors** to offset damages sustained by it as a result of such breach or violation; and
3) **USHEALTH Advisors** is conducting an investigation and evaluation regarding whether **Agent** may have violated **Section** 15 B 2).

D. <u>Death of Agent - Payment of Vested Commission Compensation and Other Fees</u>

The amount of any **Commission Compensation** and **Other Fees** vested and payable hereunder after termination of this **Agreement** will be paid by **USHEALTH Advisors** upon **Agent's** death to the individual heirs or beneficiaries designated by **Agent**, subject to the provisions of Sections 2, 7, 10, 11, 12, 13, 14, 15A, 15B, 15C, 18 and 24 hereof, or in the absence of the receipt by **USHEALTH Advisors** of such written designation prior to **Agent's** death, then to the estate of **Agent**.

E. <u>Incentive Bonuses Not Vested</u>

Any **Incentive Bonus** established pursuant to a discretionary fee or bonus program created and maintained by **USHEALTH Advisors** in its sole discretion pursuant to Section 2C hereof, shall be earned by and payable to **Agent**, (subject to the provisions of Sections 7, 9, 10, 11, 12, 13, 14, 18 and 24 hereof), only during the term of such discretionary program and prior to the termination of this **Agreement**. **Agent** shall in no event earn, be vested in or entitled to payment of any **Incentive Bonus** after the termination of this **Agreement**.

## 16. <u>METHOD OF REMITTANCE ON NEW APPLICATIONS</u>

**Agent** shall immediately remit to **USHEALTH Advisors** or the applicable insurance **Carrier**, (as designated by **USHEALTH Advisors**), the amount of all premiums **Agent** collects. **Agent** shall also immediately remit to **USHEALTH Advisors** or the applicable **Carrier**, (as designated by **USHEALTH Advisors**), the amount of all other dues, enrollment fees, or other fees **Agent** collects. It is understood and agreed that some **Carriers** may not accept an application for coverage

unless accompanied by the conditional tender of the amount of the initial premium to be charged for such insurance coverage, or the applicable dues or fees to be charged for such other Carrier's products, services or memberships.

17. **REINSTATED POLICIES AND CONVERTED POLICIES**

No **Renewal Commissions** shall be paid on lapsed policies. If a lapsed policy is reinstated as a result of the direct actions of **Agent** during the policy grace period, then **Renewal Commissions** shall be paid to **Agent** under the previously applicable **Commission Schedule**. If the reinstatement of a lapsed policy written by **Agent** is accomplished during or after the policy grace period by a different **USHEALTH Advisors'** agent, or accomplished by any insurance **Carrier** or other **USHEALTH Advisors** efforts, **Agent** shall not be entitled to a **Renewal Commissions**. Commissions on exchanges, replacement, or conversion of one form of policy of an insurance **Carrier** to another form of the same **Carrier** are governed by the **Commission Schedule**.

18. **RECORDS AND REPORTS**

**Agent** shall render such reports and keep such records and business accounts as **USHEALTH Advisors** requests. For so long as **Agent** represents **USHEALTH Advisors**, **USHEALTH Advisors** will furnish **Agent** with a monthly statement of **Agent's Account** (which may be delivered to **Agent** electronically), and **USHEALTH Advisors** will pay any amount due **Agent**. Upon receipt of such statement, **Agent** shall immediately examine it, and if not satisfied as to its accuracy, **Agent** shall return such statement and the payment to **USHEALTH Advisors** with full particulars of any discrepancy therein within thirty (30) days; otherwise the statement shall be deemed accepted by **Agent** as true and correct, and **Agent** waives the right to contest the content of such statement or the amount of such payment in the future. The **Account** on the books of **USHEALTH Advisors** shall be competent evidence of such **Account** for all purposes.

19. **PRINTED MATERIAL**

**USHEALTH Advisors** will furnish **Agent** with all supplies, applications, circulars and printed matter **USHEALTH Advisors** deems necessary for doing business under this **Agreement**. **Agent** agrees not to publish, distribute or use any circulars, advertising, sales material or other matter referring to **USHEALTH Advisors** or to **USHEALTH Advisors** policies without first securing **USHEALTH Advisors'** written approval. All printed matter and supplies **USHEALTH Advisors** furnishes are property of **USHEALTH Advisors** and shall be promptly returned to **USHEALTH Advisors** upon request or when this **Agreement** terminates.

20. **REFUNDS/REJECTION**

The insurance **Carriers** of **USHEALTH Advisors** reserve the right, at all times, to reject any application for insurance without specifying cause, and to cancel, refuse to renew, or modify any policy. **Agent** shall promptly refund all monies collected on any application by **Agent** on which a policy is declined, on any application by **Agent** on which insurance **Carriers** of **USHEALTH Advisors** issued a policy not accepted by the applicant, and on any application by **Agent** for which the premium is refunded.

21. **DISCONTINUANCE OF POLICY FORMS**

**USHEALTH Advisors** may discontinue or withdraw any policy or coverage now or hereafter made available for sale. **Security Health** may determine **First Year Commissions** and **Renewal Commissions** on any policy or certificate of coverage not listed on the attached **Commission Schedule**, which policies or certificates may, in **Security Health's** sole discretion, not be offered to **Agent** for sale to the public.

22. **POLICY REPLACEMENT PROHIBITED**

**Agent** agrees that during the term of this **Agreement**, and for a period of thirty-six (36) months following the date of its termination for any reason, **Agent** and **Agent's** employees and agents will not, directly or indirectly, contact, communicate or meet with any of the **USHEALTH Advisors** or insurance **Carrier** policyholders for the purpose of attempting or discussing a rewriting, canceling, lapsing or replacing such **USHEALTH Advisors** or insurance **Carrier** policies or coverage with a new policy or coverage from another insurance company; and **Agent** will not at any time following termination of the **Agreement** rewrite, cancel, lapse or replace any **USHEALTH Advisors** or insurance **Carrier** policy with a policy from another company. Also, **Agent** agrees that during the term of this **Agreement**, and for a period of thirty-six (36) months following the date of its termination for any reason, **Agent** and **Agent's** employees and agents will not, directly or indirectly, contact, communicate or meet with any of the **USHEALTH Advisors** or insurance **Carrier** association members or product or service holders for the purpose of attempting or discussing a rewriting, canceling, lapsing or replacing such **USHEALTH Advisors** or **Carrier** memberships, products or services with a new membership from another association or products and services of another company; and **Agent** will not at any time following termination of the **Agreement** rewrite, cancel, lapse

or replace any **USHEALTH Advisors** or **Carrier** memberships, products or services with a new membership from another association or products and services of another company.

In addition, **Agent** will not at any time after such termination attempt to solicit or recruit, directly or indirectly, any sub-agent of **USHEALTH Advisors** away from it and to any other individual or entity which is in the same or similar business of **USHEALTH Advisors** or **Carriers**. In addition, for a period of thirty six (36) months following termination of this **Agreement** for any reason, neither **Agent** nor **Agent's** employees and agents will directly or indirectly contact, communicate or meet for any reason or purpose with any **USHEALTH Advisors** or insurance **Carrier** policyholder with respect to whom **Agent** has received **First Year Commissions**, **Renewal Commissions**, or other fee, or compensation during the term of this **Agreement**.

23. <u>TRADE SECRET INFORMATION</u>

**Agent** does hereby acknowledge, agree and accept that the **Trade Secret Information** as used in this **Agreement** includes, but is not limited to: **Agent**, customer or client lists, including names, addresses, telephone numbers, and amounts and types of insurance; expiration and renewal dates of policies; lists of business leads, claims histories; due dates of premium and amounts thereof; and statements of monthly accounts submitted to **Agent** by **USHEALTH Advisors**. All Trade Secret Information furnished to **Agent** shall be and remain the property of **USHEALTH Advisors** and **Carriers**. **Agent** acknowledges that **USHEALTH Advisors** derives independent economic value from the **Trade Secret Information** and from its not being generally known to the public or to other persons who can obtain economic value from its disclosure. **Agent** will not during or after the term of this **Agreement** divulge, make known, or otherwise make use of any **Trade Secret Information** for any purpose, including, but not limited to, except as expressly authorized by **USHEALTH Advisors** in writing, the solicitation of business from any person or entity.

24. <u>INDEMNITY</u>

**Agent** shall indemnify, defend (with counsel reasonably acceptable to **USHEALTH Advisors** and **Carriers**) and hold **USHEALTH Advisors** and **Carriers** harmless from any claims, cause of action, suits, judgments, settlements, costs, expenses or other damages, including attorneys' fees, which **USHEALTH Advisors** and/or **Carrier** may suffer or incur as the result of any actual or alleged negligence, misrepresentations, fraudulent conduct, wrongful act, statement, or unauthorized act, error or omission of **Agent** and/or employees or agents of **Agent**. **USHEALTH Advisors** and **Carriers** shall have exclusive authority to direct the defense and effect settlement of any claim, cause of action or suit, without regard to the actual fault, if any, of **Agent**, but for which the foregoing indemnity and hold harmless obligation nevertheless applies. In any claim, cause of action or suit brought jointly against (i) **Agent** and **USHEALTH Advisors**, (ii) **Agent** and **Carrier**, (iii) **Agent's** agent(s) or employee(s) and **USHEALTH Advisors**, (iv) **Agent's** agent(s) or employee(s) and **Carrier**, (v) **Agent**, **Agent's** agent(s) or employee(s) and **USHEALTH Advisors**, (vi) **Agent**, **USHEALTH Advisors** and **Carrier**, (vii) **Agent's** agent(s) or employee(s), **USHEALTH Advisors** and **Carrier** or (viii) **Agent**, **Agent's** agent(s) or employee(s), **USHEALTH Advisors** and **Carrier**, without regard to the actual fault, if any, of **Agent** and/or the applicable agent(s) or employee(s) of **Agent**, but for which the foregoing indemnity and hold harmless obligation nevertheless applies, **USHEALTH Advisors** and/or **Carrier** shall have exclusive authority, but not the obligation, to direct the joint defense of such parties and effect settlement thereof. **Agent** agrees to be bound by the terms of any such settlements, and **Agent** shall, upon demand, pay **USHEALTH Advisors** and/or **Carrier**, as applicable, any sums expended by either or both of them to fund any such settlement. The amount of any such settlement, together with all defense costs, defense expenses and attorneys' fees incurred by **USHEALTH Advisors** and/or **Carrier** in any such suit shall be an **Obligation** and a debt of **Agent** hereunder. The right of **Agent** or any person claiming through **Agent** to receive any **Renewal Commissions**, compensation, or other monies pursuant to the **Agreement** shall at all times be subordinate to the right of **USHEALTH Advisors** to offset or apply such **Renewal Commissions**, compensation and other money against any indebtedness and **Obligation** of **Agent** to **USHEALTH Advisors** as a result of this Section, as well as and Sections 10, 11, 12, 13 and 14.

25. <u>ERRORS AND OMISSIONS</u>

During the term of this **Agreement**, **Agent** agrees to pay or reimburse **USHEALTH Advisors** his/her pro rata cost of Errors and Omissions liability insurance issued to **USHEALTH Advisors** as the named insured and covering **Agent** as an additional insured. It is agreed that the amount of coverage under such policy shall not be less than $1,000,000 per occurrence and may be in any higher amount that **USHEALTH Advisors** may reasonably require. It is understood that as of the effective date of this **Agreement**, the current, Error and Omissions liability insurance coverages issued to **USHEALTH Advisors** have been underwritten by Pacific Casualty Company, Inc. with coverage as additional insureds for agents exclusively representing and contracted with **USHEALTH Advisors**, including **Agent**, for a premium of $10.50 per week per agent. **Agent** agrees that **Agent's** pro rata share of the applicable Error and Omissions premium paid by **USHEALTH Advisors** to Pacific Casualty Company, Inc. or other designated Errors and Omissions insurance company will be treated as an **Advance**, which **Advance** will become part of **Agent's Account** and an **Obligation** of **Agent**.

26. **SURVIVABILITY**

Sections 4, 5, 7, 8, 10, 11, 12, 13, 14, 15, 18, 20, 22, 23, 24, 27, 28, 29, 30, and 32 of this **Agreement** shall survive its termination for any reason.

27. **ASSIGNMENT**

Agent may not, without the express written consent of **USHEALTH Advisors**, assign any of its rights or responsibilities hereunder. **USHEALTH Advisors** may assign its rights hereunder to a third party including, but not limited to, any lender.

28. **MANDATORY MEDIATION AND BINDING ARBITRATION**

A. **Mandatory Mediation**

Except as otherwise provided in this **Agreement**, all claims, disputes, and controversies arising out of or in any manner relating to this **Agreement**, or any other **Agreement** executed in connection with this **Agreement**, or to the performance, interpretation, application or enforcement hereto including, but not limited to, breach hereof (in each case, "**Dispute**"), shall be referred to mediation before, and as a condition precedent to, the initiation of any adjudicative action or proceeding, including arbitration, and any suit, action or arbitration shall be barred unless mediation has been attempted in good faith. If there is a **Dispute**, the party claiming the existence of a **Dispute** must make written demand for mediation prior to instituting a lawsuit, action or arbitration proceeding.

The mediation shall be conducted in Tarrant County, Texas. Each party shall bear its own expenses incurred as a result of submitting the matter to mediation with the expense of the mediator borne equally and in advance by the parties. Should **Agent** fail to pay such fees in advance, such mediation and arbitration shall be abated until a reasonable period of time after the cure of such non-payment by **Agent**. The mediator shall be chosen by joint **Agreement** of **USHEALTH Advisors** and **Agent**. In the event an **Agreement** cannot be reached with respect to a mediator, either party may request that Judicial Arbitration and Mediation Services, Inc. or its successor ("**JAMS**") appoint a mediator; Selection of the mediator by **JAMS** shall be binding.

B. **Mandatory Binding Arbitration**

SHOULD MEDIATION BE UNSUCCESSFUL, IT IS AGREED THAT THE **DISPUTE** SHALL BE SUBMITTED TO BINDING, NON-APPEALABLE ARBITRATION AND THAT SUCH ARBITRATION SHALL BE GOVERNED BY THE TEXAS ARBITRATION ACT.

Either party may within sixty (60) days from the date of such unsuccessful mediation or one (1) year from the date of the alleged breach or occurrence resulting in the **Dispute**, whichever is later, make a demand for arbitration by filing a demand in writing with the other party and serving the same by depositing it in the U. S. Mail, certified mail, return receipt requested. **USHEALTH Advisors** and **Agent** shall each choose, within sixty (60) days after demand for arbitration is made, a former officer or executive of an insurance company as its arbitrator and the two appointed arbitrators shall choose a third arbitrator possessing the same qualifications. If either party fails to appoint an arbitrator within sixty (60) days after the written demand for arbitration is made, the party who has appointed an arbitrator may select the second arbitrator. If the two party arbitrators have failed within sixty (60) days to appoint the third arbitrator, either party may petition a District Court of Tarrant County, Texas for an order selecting the third arbitrator. All reasonable costs incurred as a result of obtaining the court order compelling appointment of an arbitrator shall be paid by the non-complying party.

All arbitration hearings conducted hereunder, and all judicial proceedings to enforce any of the provisions hereof, shall take place in Tarrant County, Texas. The hearing before the arbitrators of the matter to be arbitrated shall be at the time and place within said County as is selected by the arbitrators. Notice shall be given and the hearing conducted in accordance with the Uniform Arbitration Act.

After selection of the arbitrators as above provided, the arbitration hearing shall be conducted in accordance with the Commercial Rules of the American Arbitration Association.

The decision of any two arbitrators with respect to a **Dispute** shall be binding and conclusive and non-appealable and shall be submitted to the court for confirmation with the same effect as a judgment.

Each of the parties hereby irrevocably waives punitive, exemplary, consequential and other non-compensatory damages in connection with any arbitration award with respect to any **Dispute**.

The costs and expenses of arbitration, including the fees of the arbitrators, shall be borne by the losing party or in such proportions as the arbitrators shall determine. The successful party shall recover as expenses all reasonable attorneys' fees incurred by said party in connection with the arbitration proceedings.

C. **Exclusivity**

Each party agrees that compliance with the requirements of this Section 28 is a condition to its right to assert any claims with respect to a Dispute in any other forum, except only as set forth in subparagraph D below.

D. **Exceptions**

Notwithstanding any other provision of this Agreement, USHEALTH Advisors may enforce Agent's compliance with any restrictive covenant, policy replacement prohibition, confidentiality provision or trade secret provision contained in this Agreement to the fullest extent permitted by law by seeking any remedy available at law or in equity, including but not limited to obtaining a temporary restraining order or injunction, without having to mediate and/or arbitrate, and without need to post a bond to do so.

In addition, nothing contained in this Agreement shall in any manner limit USHEALTH Advisors' rights to recover through legal process all amounts due under the Agent's Promissory Note and enforce all remedies available under the provisions of Sections 10, 11, 12, 13 and 14 in connection with the pledge of Collateral without the necessity of mediation or arbitration.

Agent agrees that Agent is not excused from complying with any restrictive covenant, policy placement prohibition, confidentiality provision or trade secret provision because of any claim Agent may have against USHEALTH Advisors.

29. **APPLICABLE LAW**

This Agreement shall be governed by the laws of the State of Texas. Exclusive venue and jurisdiction with respect to all matters hereunder shall be Tarrant County, Texas.

30. **WAIVER**

No waiver by USHEALTH Advisors of any right hereunder or of any default by Agent shall be binding upon USHEALTH Advisors unless in writing executed by USHEALTH Advisors. Failure or delay by USHEALTH Advisors to exercise any right hereunder or waiver of any default of Agent shall not operate as a waiver of any other right, of further exercise of such right, or of any further default.

31. **PARTIAL INVALIDITY**

If any provision of this Agreement is declared invalid for any reason, the invalidity of that provision shall not affect the validity of any other provision of this Agreement, and all other provisions shall remain in full force and effect. It is declared to be the intention of the parties that they would have executed all other provisions of this Agreement without including any such part or parts, or portions that may, for any reason, be hereafter declared invalid.

32. **CREDIT REPORT AND OTHER REPORTS**

Agent acknowledges and agrees that USHEALTH Advisors may at any time and from time to time, either directly or through a credit reporting agency, undertake verification or re-verification of any information contained in Agent's application to USHEALTH Advisors, and Agent authorizes USHEALTH Advisors to request and obtain an investigative credit report including but not limited to information as to Agent's character, general reputation, personal characteristics and mode of living. Upon Agent's written request to USHEALTH Advisors within a reasonable period of time after the date of this instrument, USHEALTH Advisors shall make a complete and accurate disclosure to Agent of the nature and scope of the investigation requested.

33. **ENTIRE AGREEMENT**

THIS Agreement REPRESENTS THE ENTIRE Agreement BETWEEN THE PARTIES REGARDING THE SALE BY Agent ON BEHALF OF USHEALTH Advisors OF THE PRODUCTS OF Carriers FROM THE DATE OF THE EXECUTION OF THIS AGREEMENT FORWARD UNTIL TERMINATION AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES, AND ANY AMENDMENT OR MODIFICATION HEREOF SHALL BE IN WRITING AND SIGNED BY THE PARTY BOUND THEREBY. PROVIDED FURTHER, HOWEVER, NOTHING CONTAINED HEREIN SHALL CONSTITUTE A RELEASE, DISCHARGE OR MODIFICATION OF THE DUTIES AND OBLIGATIONS OF Agent UNDER OR BY VIRTUE OF ANY PRIOR WRITTEN AGENT AGREEMENT THAT MAY HAVE EXECUTED WITH USHEALTH Advisors OR ANY OTHER USHEATH GROUP, INC. SUBSIDIARY, INCLUDING, BUT NOT LIMITED THE RESPONSIBILITY AND OBLIGATIONS OF Agent TO TIMELY REPAY THE ACCOUNT (AS DEFINED IN EACH SUCH PRIOR AGENT AGREEMENT). ANY PRIOR ORAL AGREEMENTS BETWEEN THE PARTIES ARE SUPERSEDED BY AND MERGED INTO THIS DOCUMENT, AND THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

34. **EFFECTIVE DATE**

This Agreement will become effective upon Agent becoming licensed in Agent's territory for the sale of insurance described herein, or the date of USHEALTH Advisors' execution of this Agreement at its offices in Texas, whichever shall occur last.

Executed as of the 4 day of November, 2013.

USHEALTH Advisors, L.L.C.

By: [signature]

Printed Name: Troy McQuagge

Title: CEO

Agent

Signature: Birsen Goksu

Printed Name: Birsen Goksu

Address: 12507 Overstreet Road

Windermere, FL 34786